# Matter of David Paul KEELEY, Respondent

*Decided October 20, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The term "rape" in section 101(a)(43)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A) (2012), encompasses an act of vaginal, anal, or oral intercourse, or digital or mechanical penetration, no matter how slight. *Perez-Gonzalez v. Holder*, 667 F.3d 622 (5th Cir. 2012), not followed.

(2) The term "rape" also requires that the underlying sexual act be committed without consent, which may be shown by a statutory requirement that the victim's ability to appraise the nature of the conduct was substantially impaired and the offender had a culpable mental state as to such impairment.

FOR RESPONDENT: Amanda H. Frost, Esquire; and Doran Shemin, Washington, D.C.

FOR THE DEPARTMENT OF HOMELAND SECURITY: Meggan G. Johnson, Associate Legal Advisor

BEFORE: Board Panel: PAULEY, MALPHRUS, and MULLANE, Board Members.

PAULEY, Board Member:

In a decision dated August 8, 2016, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony rape under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2012), and ordered him removed from the United States.[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the United Kingdom who became a lawful permanent resident of the United States on June 23, 1997. On January 13, 2011, he was convicted of rape in violation of section 2907.02(A)(1)(c) of the Ohio Revised Code Annotated. The Immigration Judge determined that the respondent's offense was an aggravated felony

---

[1] Section 101(a)(43)(A) of the Act defines the term "aggravated felony" as "murder, rape, or sexual abuse of a minor."

under section 101(a)(43)(A) of the Act.  The respondent did not apply for any relief from removal, and the Immigration Judge ordered him removed.

## II.  POSITIONS OF THE PARTIES

The parties agree that, at all relevant times, section 2907.02(A)(1)(c) of the Ohio Revised Code Annotated made it unlawful to "engage in sexual conduct" with another with knowledge or reason to know of the fact that the other person's ability to resist or consent is "substantially impaired because of a mental or physical condition or because of advanced age."  The parties further agree that the term "sexual conduct" was, at all relevant times, defined in section 2907.01(A) as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.

The parties also generally agree that "rape" in section 101(a)(43)(A) of the Act refers to an offense that encompasses some form of sexual act that is committed under certain prohibitive conditions, including incapacity to consent to the sexual act.  There are two points of contention in this case. First, the parties disagree on whether "rape" in section 101(a)(43)(A) encompasses digital or mechanical penetration or is confined to acts of vaginal, anal, or oral intercourse.  Second, they dispute whether the "substantial impairment" standard under Ohio law is synonymous with an incapacity to consent.[2]

Whether the respondent's conviction is for an aggravated felony rape offense under section 101(a)(43)(A) of the Act is a question of law that we review de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2017).

## III.  ANALYSIS

Our inquiry is governed by the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and its progeny.  This approach requires us to compare the scope of conduct punished as rape under section 2907.02(A)(1)(c) of the Ohio Revised Code Annotated to the generic definition of "rape" in section 101(a)(43)(A) of the Act.

---

[2]  We do not purport to resolve all aspects of the definition of "rape" in section 101(a)(43)(A) of the Act.  We will only address the Ohio statute in light of the contentions advanced by the parties, below and on appeal.  For example, we need not reach any issues regarding oral sex and its relationship to penetration.  Those issues are reserved for future decisions.

The term "rape" was added to section 101(a)(43)(A) by section 321(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-627. This term is not defined by the Act or any other provision of Federal law. In the absence of a statutory definition, we must define the term according to its ordinary, contemporary meaning in 1996, when "rape" was added to section 101(a)(43)(A). *See Matter of Alvarado*, 26 I&N Dec. 895, 897 (BIA 2016) (finding "it appropriate to adopt a generic definition [of a crime] based on how [it] was commonly defined" when section 101(a)(43) was enacted).

To fully understand the meaning of "rape" in 1996, we must examine the evolution of rape offenses, and sex offenses in general, from their common law roots to Congress' addition of the term to the Act. Common law recognized two sexual offenses: rape and sodomy. 1 Wayne R. LaFave, *Substantive Criminal Law* § 2.1 (2d ed.), Westlaw (database updated Oct. 2017). The common law defined rape as "the carnal knowledge of a woman forcibly and against her will," and for the first half of the 20th century, State laws proscribing rape followed this definition. 2 LaFave, *supra*, § 17.1 (quoting 4 William Blackstone, *Commentaries on the Laws of England* 210 (1769)). Such "carnal knowledge" referred to the "physical act necessary for rape," namely, the "penetration of the female sex organ by the male organ." *Id.* "Sodomy" in early American jurisprudence deviated from its common law definition, which prohibited anal intercourse between two men, including acts such as anal and oral intercourse between two males or a male and a female. *See* Model Penal Code §§ 213.0(3), 213.2 cmt. 1 at 357−62 (1980) (regarding "deviate sexual intercourse").

The Model Penal Code recognized the first notable shift in the definition of rape in the early 1960s. The term "carnal knowledge" was replaced with "sexual intercourse," which the Model Penal Code defined as including vaginal, anal, and oral intercourse. Model Penal Code § 213.1(1) (1962). This change acknowledged the growing community consensus that intercourse was the defining act that separated rape from other forms of nonconsensual sexual contact. *See* Model Penal Code § 213.1 cmt. 8(d) at 346 (1980) (discussing the three categories of rape statutes that existed at the time: (1) those that punish "only genital copulation"; (2) those that reach "anal and oral copulation"; and (3) those that "include digital or mechanical penetration as well as genital, anal, and oral sex"). This change also earmarked the use of "rape" as an all-encompassing term to refer to offenses with the common characteristic of sexual intercourse. *See id.* (acknowledging that by including oral and anal intercourse in the definition of "sexual intercourse," the definition of rape necessarily included "behavior . . . punished in many jurisdictions under sodomy laws").

The meaning of "rape" continued to evolve during the rape reform movement, which started in the early 1970s. *See* David P. Bryden, *Redefining Rape*, 3 Buff. Crim. L. Rev. 317, 320–21 (2000); Cassia C. Spohn, *The Rape Reform Movement: The Traditional Common Law and Rape Law Reforms*, 39 Jurimetrics J. 119, 122–30 (1999); *see also* Patricia Wencelblat, *Boys Will Be Boys? An Analysis of Male-on-Male Heterosexual Sexual Violence*, 38 Colum. J.L. & Soc. Probs. 37, 44 (2004) ("All state legislatures considered changes to their rape laws between 1974 and 1980."). Among other things, the changes included making the offense gender-neutral as to both the perpetrator and victim and further broadening the types of sexual acts covered. *See* Bryden, *supra*, at 321; Spohn, *supra*, at 122. The movement also resulted in numerous States renaming what they previously labeled "rape" with terms like "sexual assault," "sexual battery," and "criminal sexual conduct." *See* Bryden, *supra*; Spohn, *supra*. "Th[ese] statutory development[s], 'when viewed in totality, ha[ve] resulted in a modern crime which has little in common with its common-law ancestor . . . .'" *Taylor*, 495 U.S. at 593 (citation omitted).

The respondent argues that the scope of our inquiry into the ordinary, contemporary meaning of "rape" in 1996 should be limited to examining the laws of the 23 States that prohibited a crime specifically called "rape" at that time.[3] Because less than a majority of these States included digital or mechanical penetration in the definition of rape, he argues that the community consensus in 1996 was that such conduct was not rape.[4]

The United States Court of Appeals for the Fifth Circuit adopted a similar approach in *Perez-Gonzalez v. Holder*, 667 F.3d 622, 627 (5th Cir. 2012). In that case, the court found that in 1996 a minority of States included digital penetration in statutes punishing a crime called "rape," while most States and

---

[3]  Ala. Code §§ 13A-6-61, -62 (1996); Ark. Code Ann. § 5-14-103 (Michie 1996); Cal. Penal Code §§ 261, 262 (West 1996); Ga. Code Ann. § 16-6-1 (1996); Idaho Code § 18-6101 (1996); Ind. Code § 35-42-4-1 (1996); Kan. Stat. Ann. § 21-3502 (1996); Ky. Rev. Stat. Ann. §§ 510.040, .050, .060 (Michie 1996); La. Rev. Stat. Ann. §§ 14:41, :42, :42.1, :43 (West 1996); Md. Ann. Code art. 27, §§ 462, 463 (1996); Mass. Gen. Laws ch. 265, §§ 22, 23 (1996); Mo. Rev. Stat. §§ 566.030, .032, .034 (1996); N.Y. Penal Law §§ 130.25, .30, .35 (McKinney 1996); N.C. Gen. Stat. §§ 14-27.2, .3 (1996); Ohio Rev. Code Ann. § 2907.02 (Anderson 1996); Okla. Stat. tit. 21, §§ 1111, .1 (1996); Or. Rev. Stat. §§ 163.355, .365, .375 (1996); 18 Pa. Cons. Stat. § 3121 (1996); S.D. Codified Laws § 22-22-1 (Michie 1996); Tenn. Code Ann. §§ 39-13-502, -503 (1996); Utah Code Ann. §§ 76-5-402, -402.1, -402.2, -402.3 (1996); Va. Code Ann. § 18.2-61 (Michie 1996); Wash. Rev. Code §§ 9A.44.040, .050, .060, .073, .076, .079 (1996).

[4]  In 1996, eight States had expanded the term "rape" to include both mechanical and digital penetration: Arkansas, Kansas, Massachusetts, Ohio, Oklahoma, South Dakota, Tennessee, and Washington. *See* Appendix A. Kentucky and Utah added only mechanical penetration to its definition of "rape." *See id.*

the District of Columbia did not.  Based on this survey, the court concluded "that digital penetration was [not] commonly considered rape in 1996."  *Id.*  We respectfully disagree with this conclusion.

In our view, the respondent's argument and the Fifth Circuit's approach rest on the faulty proposition that the laws of the 27 States and the District of Columbia that used terms other than "rape" to refer to crimes prohibiting forms of nonconsensual sexual intercourse in 1996 are irrelevant to determining the generic definition of "rape."  The community consensus in 1996 was that the newly denominated crimes of "sexual assault," "sexual battery," and "criminal sexual conduct" were synonymous with "rape."  *See* Bryden, *supra*; Spohn, *supra*; *see also Black's Law Dictionary* 1267 (7th ed. 1999) (stating that "rape" is "[a]lso termed (in some statutes) *unlawful sexual intercourse*; *sexual assault*; *sexual battery*; [and] *sexual abuse*").  And many of the relevant jurisdictions treated these crimes and "rape" as being "interchangeable," "synonymous," or "equivalent."[5]  As the Illinois Supreme Court has explained, the goal of renaming these crimes was "to take a hodgepodge of preexisting statutes and fit them into a consistent coherent whole which is a spectrum of sex offenses . . . [and] create[] *one*

---

[5]   *See, e.g.*, *Reynolds v. State*, 664 P.2d 621, 623 (Alaska Ct. App. 1983) (referring to rape as the "predecessor" to the State offense of "sexual assault"); *State v. Superior Court of Ariz.*, 744 P.2d 725, 727 (Ariz. Ct. App. 1987) ("The term 'rape' was eliminated, and what were formerly . . . rape situations are now defined separately" as "sexual assault" and "sexual conduct with a minor"); *Wicks v. State*, 559 A.2d 1194, 1195 (Del. 1989) (providing that the Legislature "deleted the crime of rape . . . and substituted a crime known as unlawful sexual intercourse . . . , which . . . . [includes] all the elements previously required to establish the commission of rape"); *Adams v. State*, 412 So. 2d 850, 856 (Fla. 1982) ("Acts which would have constituted rape or attempted rape [now] constitute a sexual battery or attempt to commit sexual battery . . . ."); *State v. Kamana'o*, 82 P.3d 401, 402 n.3 (Haw. 2003) ("The offenses of rape . . . and sodomy . . . are now subsumed within [a single offense that] has been redenominated 'sexual assault . . . .'"); *Hovey v. Iowa State Daily Publ'n Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985) ("Legal writers who have attempted to interpret the new Iowa Criminal Code . . . have noted that the terms 'rape' and 'sexual abuse' are regarded interchangeably."); *State v. James-El*, No. C7-96-365, 1996 WL 363385, at *2 (Minn. Ct. App. July 2, 1996) (providing that "the Minnesota equivalent to appellant's Illinois rape convictions is criminal sexual conduct"); *State v. Spotted Blanket*, 955 P.2d 1347, 1348 (Mont. 1998) (characterizing the offense of "sexual intercourse without consent" as "rape[]"); *State v. Ayer*, 612 A.2d 923, 925 (N.H. 1992) ("Rape [is] the common law counterpart to aggravated felonious sexual assault . . . ."); *State v. Cruz*, 593 A.2d 1169, 1174 (N.J. 1991) (stating that the crime of rape "has been replaced by the equivalent or parallel crime of aggravated sexual assault"); *State v. Tafoya*, 227 P.3d 92, 107 (N.M. Ct. App. 2010) (stating that criminal sexual penetration "statutes were intended to codify the common law crime of rape"); *Slocumb v. State*, 522 S.E.2d 809, 811 n.7 (S.C. 1999) ("We have equated 'rape' with the revised statutory term 'criminal sexual conduct.'"); *State v. Allison*, 299 N.W.2d 286, 286 n.1 (Wis. Ct. App. 1980) ("The crime formerly known as 'rape' is now denominated 'sexual assault' . . . .").

*comprehensive law that reflects the fact that rape encompasses all types of sexual assault.*"  *In re Detention of Lieberman*, 776 N.E.2d 218, 226 (Ill. 2002) (alterations in original) (emphasis added) (citation omitted).

Around the time the States were redesignating these offenses, Congress replaced the Federal crime of "rape" under former 18 U.S.C. § 2031 (1982), with "aggravated sexual abuse" and "sexual abuse."  Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 87, 100 Stat. 3592, 3620–21 (codified at 18 U.S.C. §§ 2241, 2242 (1988)). Congress pursued these changes in an effort to "modernize[] and reform[] Federal *rape laws*."  132 Cong. Rec. H11,291, H11,292 (daily ed. Oct. 17, 1986) (statement of Rep. Berman), 1986 WL 788882, at *H11291-01 (emphasis added).  In other words, Congress' restyling of "rape" as "aggravated sexual abuse" and "sexual abuse" was intended to remove barriers associated with the traditional understanding of rape and to bring Federal law in line with the growing consensus among the States that the term "rape" refers to a broader range of unacceptable conduct than a male coercing a female to engage in sexual intercourse.  *See generally* H.R. Rep. No. 99-594, at 10–11 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6186, 6190–91.  Therefore, despite the fact that Congress redenominated rape as new offenses, it still viewed these offenses as being forms of "rape."

Congress' enactment of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, supports our conclusion in this regard.  As relevant here, this Act imposed mandatory prison sentences for individuals with certain prior violent felony convictions.  *See id.* § 70001, 108 Stat. at 1982–84.  Congress defined one such offense, "assault with intent to commit rape," as having the elements of "engaging in physical contact with another . . . with intent to commit aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242)."  *Id.* § 70001, 108 Stat. at 1983 (codified at 18 U.S.C. § 3559(c)(2)(A) (1994)).  Thus, 2 years prior to the addition of the term "rape" to section 101(a)(43)(A) of the Act, Congress was using the terms "aggravated sexual abuse," "sexual abuse," and "rape" interchangeably.

In the Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, § 10, 117 Stat. 972, 988 (codified at 42 U.S.C. § 15609(9) (2006)), Congress defined the offense of "rape," returning to that term to proscribe the same sexual misconduct it had previously labeled as "aggravated sexual abuse" and "sexual abuse."[6]  *Compare id.* § 10, 117 Stat. at 988, *with* 18 U.S.C.

---

[6]  Delaware has also returned to using "rape" to proscribe nearly identical offenses after it defined various degrees of "unlawful sexual intercourse" in 1996.  *See* Del. Code Ann. tit. 11, §§ 773, 774, 775 (1996); S.B. 226, 139th Gen. Assemb., 2d Reg. Sess., 1998 Delaware Laws Ch. 285 (renumbered at Del. Code Ann. tit. 11, §§ 771, 772, 773).

§§ 2241, 2242. This is further evidence that Congress, like many of the States, has used other terms interchangeably with the term "rape."[7]

It is unlikely that in defining one of "the most heinous crimes" it has included as an aggravated felony, *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017), Congress intended to exclude comparably heinous offenses that were outlawed by the majority of jurisdictions across the country merely because they were labeled differently. Additionally, we see no principled reason for allowing the laws of some States to inform our understanding of rape but, at the same time, ignoring substantially similar laws from other jurisdictions based solely on the label they employed. *See Taylor*, 495 U.S. at 589 (providing that the focus of the categorical approach is to identify "crimes having certain common characteristics . . . regardless of how they were labeled by state law"). *Compare, e.g.*, Ohio Rev. Code Ann. § 2907.02 (Anderson 1996) (defining "rape"), S.D. Codified Laws § 22-22-1 (Michie 1996) (same), *and* Tenn. Code Ann. §§ 39-13-502, -503 (1996) (defining "aggravated rape" and "rape"), *with* 720 Ill. Comp. Stat. 5/12-13, 5/12-14 (West 1996) (defining "criminal sexual assault" and "aggravated criminal sexual assault"), Mont. Code Ann. § 45-5-503 (1996) (defining "sexual intercourse without consent"), Nev. Rev. Stat. § 200.366 (1996) (defining "sexual assault"), *and* N.M. Stat. Ann. § 30-9-11 (Michie 1996) (defining "criminal sexual penetration"). Indeed, such a label-centric approach runs counter to the very purpose of the categorical approach.

For these reasons, we find it appropriate to examine Federal law and the laws of all 50 States and the District of Columbia in 1996 as they relate to crimes involving unlawful sexual intercourse to inform our understanding of the ordinary, contemporary meaning of the term "rape" at the time of its inclusion in the definition of an aggravated felony. *See Esquivel-Quintana*, 137 S. Ct. at 1570–72.

## A. Sexual Act

The consensus among the States in 1996 was that rape entailed not only acts of vaginal, anal, and oral intercourse but also digital and mechanical penetration of the vagina or anus. At that time, the significant majority of

---

[7] We recognize that Congress had the opportunity to use a term such as "sexual abuse" in addition to, or in lieu of, the term "rape." *See, e.g.*, 142 Cong. Rec. S4058-02 (1996). However, it is not persuasive that in choosing to use "rape" in section 101(a)(43)(A) of the Act, Congress meant to return to a narrow common law definition that it rejected a decade earlier, as opposed to merely adopting a generic term that is to be defined according to its accepted meaning at the time of enactment. *See generally Taylor*, 495 U.S. at 591 (requiring a "clear indication that . . . Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses").

States and the District of Columbia proscribed acts of digital and mechanical penetration in their statutes prohibiting rape and other comparable sexual offenses.[8]  A total of 32 jurisdictions included both digital and mechanical penetration, while 4 included mechanical, but not digital, penetration.  *See* Appendix A.  Because a majority of jurisdictions defined rape to include digital and mechanical penetration, we conclude that such offenses are also covered by the definition of "rape" in section 101(a)(43)(A) of the Act.

The rationale for including digital and mechanical penetration is not difficult to discern.  "The essential interests protected by the law of rape— the [victim's] freedom of choice and immunity from unwanted intimacy"— are fully implicated, regardless of the manner in which the penetration is accomplished.  Model Penal Code § 213.1 (1980).

We are persuaded in part by the fact that the closely related Federal crimes of "aggravated sexual abuse" and "sexual abuse" defined in 18 U.S.C. § 2241 and § 2242 were similarly drafted.  *See Matter of M-W-*, 25 I&N Dec. at 752 n.5 (noting that, in formulating the generic definition of a term appearing in the Act's list of aggravated felonies, reliance should be placed "to a significant degree" on the Federal definition of an offense because removal proceedings are a function of Federal law).  These statutes make it unlawful, in various circumstances, to engage in a "sexual act" with another.  As of 1996, "sexual act" was defined, in relevant part, as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object."  18 U.S.C. § 2246(2)(C) (1994).

---

[8]  It is not clear how many jurisdictions in 1996 would ultimately conform to the Fifth Circuit's understanding of rape in *Perez-Gonzalez*.  The laws of 35 States and the District of Columbia would fail from the outset for being overbroad, and likely indivisible, for including digital and/or mechanical penetration.  *See* Appendix A.  The Fifth Circuit also opined, in dicta, that "rape" entails other common law concepts, such as a lack of gender neutrality (that is, the aggressor must be male and the victim female), a requirement of penile-vaginal penetration, and a requirement that force be used or threatened.  *See Perez-Gonzalez*, 667 F.3d at 626.  By our count, that would eliminate the comparable sex offenses of 12 of the remaining 15 jurisdictions.  *See* Cal. Penal Code § 261(a); Del. Code Ann. tit. 11, § 775(a); Idaho Code § 18-6101; Ind. Code § 35-42-4-1; La. Rev. Stat. Ann. § 14:41; Md. Ann. Code art. 27, §§ 462, 463; Miss. Code Ann. § 97-3-67 (1996); N.C. Gen. Stat. §§ 14-27.2, .3; Or. Rev. Stat. § 163.375; 18 Pa. Cons. Stat. § 3121(4); Va. Code Ann. § 18.2-61; *see also People v. Liberta*, 474 N.E.2d 567, 578–79 (N.Y. 1984) (indicating that New York's rape offense is gender neutral).  We do not believe such a narrow definition encompasses a "general consensus" of the laws throughout the country in 1996.  *Esquivel-Quintana*, 137 S. Ct. at 1572; *see also Torres v. Lynch*, 136 S. Ct. 1619, 1628 (2016) (reaffirming the principle that the categorical approach should not be applied so as to produce the "haphazard" result of preventing the Act from applying to a significant majority of State offenses).

Thus, we conclude that "rape" under section 101(a)(43)(A) of the Act includes an act of vaginal, anal, or oral intercourse or digital or mechanical penetration of the vagina or anus, no matter how slight.[9]

---

[9]  While not at issue in this case, we note that most jurisdictions have historically included a "penetration" requirement in rape statutes. *See* Model Penal Code § 213.1 cmt. 8(d) at 346–48 (1980). However, by 1996 the majority of jurisdictions, 29 in total, did *not* require penetration in cases of oral intercourse. These jurisdictions include (1) Alaska, Alaska Stat. § 11.81.900(a)(55)(A) (Michie 1996); *Murray v. State*, 770 P.2d 1131, 1139 (Alaska Ct. App. 1989); (2) Arizona, Ariz. Rev. Stat. § 13-1401(A)(1) (1996); (3) Connecticut, Conn. Gen. Stat. § 53a-65(2) (1996); *State v. Kish*, 443 A.2d 1274, 1279 (Conn. 1982), *overruled in part on other grounds by State v. Avcollie* , 453 A.2d 418 (Conn. 1982); (4) Delaware, Del. Code Ann. tit. 11, §§ 761(a), (b), (e)(2); (5) District of Columbia, D.C. Code Ann. § 22-4101(8)(B) (1996); (6) Florida, Fla. Stat. Ann. § 794.011(1)(h) (West 1996); *Richards v. State*, 738 So. 2d 415, 418 (Fla. Dist. Ct. App. 1999); *State v. Pate*, 656 So. 2d 1323, 1325 (Fla. Dist. Ct. App. 1995); (7) Illinois, 720 Ill. Comp. Stat. 5/12-12(f); *People v. Torres*, 568 N.E.2d 157, 162 (Ill. App. Ct. 1991); (8) Iowa, Iowa Code § 702.17 (1996); (9) Maine, Me. Rev. Stat. Ann. tit. 17-A, § 251(1)(C)(1) (West 1996); (10) Massachusetts, *see Commonwealth v. Gallant*, 369 N.E.2d 707 (Mass. 1977); *see also Commonwealth v. King*, 834 N.E.2d 1175, 1184 (Mass. 2005); *Commonwealth v. Benoit*, 531 N.E.2d 262, 266 (Mass. App. Ct. 1988); *Commonwealth v. Mosby*, 413 N.E.2d 754, 765–66 (Mass. App. Ct. 1980); (11) Michigan, Mich. Comp. Laws § 750.520a(l) (1996); *People v. Conway*, 666 N.W.2d 185 (Mich. 2003); (12) Minnesota, Minn. Stat. § 609.341(12)(1) (1996); *State v. Blom*, 358 N.W.2d 63, 64 (Minn. 1984); (13) Nebraska, Neb. Rev. Stat. §§ 28-318(6) (1996); *State v. Brown*, 405 N.W.2d 600, 607 (Neb. 1987); (14) Nevada, Nev. Rev. Stat. § 200.364(2); *Hutchins v. State*, 867 P.2d 1136, 1141 (Nev. 1994); *Maes v. Sheriff, Clark Cty.*, 582 P.2d 793, 794 (Nev. 1978); (15) New Hampshire, N.H. Rev. Stat. Ann. § 632-A:1(V) (1996); *State v. Melcher*, 678 A.2d 146, 148 (N.H. 1996); (16) New Jersey, N.J. Stat. Ann. § 2C:14-1(c) (West 1996); *In re Interest of S.M.*, 666 A.2d 177, 180 (N.J. Super. Ct. App. Div. 1995); (17) New Mexico, N.M. Stat. Ann. § 30-9-11(A); *State v. Orona*, 638 P.2d 1077, 1080 (N.M. 1982); *State v. Delgado*, 815 P.2d 631, 633 (N.M. Ct. App. 1991); (18) North Dakota, N.D. Cent. Code § 12.1-20-02(3) (1996); *State v. Johnson*, 379 N.W.2d 291, 292 (N.D. 1986); (19) Ohio, Ohio Rev. Code. Ann. § 2907.01(A) (effective Sept. 3, 1996); *State v. Clark*, 666 N.E.2d 308, 309 (Ohio Ct. App. 1995); *State v. Bailey*, 604 N.E.2d 1366, 1367 (Ohio Ct. App. 1992); *State v. Hiltabidel*, No. 11971, 1985 WL 10801, at *2 (Ohio Ct. App. May 1, 1985); (20) Rhode Island, R.I. Gen. Laws § 11-37-1(8) (1996); *State v. Higham*, 865 A.2d 1040, 1049 (R.I. 2004); (21) South Carolina, S.C. Code Ann. § 16-3-651(h) (Law. Co-op. 1996); *State v. Morgan*, 574 S.E.2d 203, 209 (S.C. Ct. App. 2002); (22) South Dakota, S.D. Codified Laws § 22-22-2; (23) Tennessee, Tenn. Code Ann. § 39-13-501(7); *State v. Marcum*, 109 S.W.3d 300, 303 (Tenn. 2003); *State v. Evans*, No. 02C01-9306-CC-00124, 1994 WL 59452, at *3 (Tenn. Crim. App. Mar. 1, 1994); (24) Texas, Tex. Penal Code Ann. § 22.011(a)(1)(C) (West 1996); (25) Vermont, Vt. Stat. Ann. tit. 13, § 3251(1) (1996); (26) Washington, Wash. Code Ann. § 9A.44.010(1)(c); (27) West Virginia, W. Va. Code § 61-8B-1(7) (1996); (28) Wisconsin, Wis. Stat. §§ 940.225(5)(c) (1996); *State v. Hill*, 888 N.W.2d 23 (Wis. Ct. App. 2016) (unpublished); *In re G.M.*, 321 N.W.2d 367 (Wis. Ct. App. 1982) (unpublished); (29) Wyoming, Wyo. Stat. Ann. § 6-2-301(a)(vii)(B) (Michie 1996).

## B.  Consent

Regarding the issue of consent, the parties do not dispute that a rape occurs when the relevant sexual act is "committed when the [victim's] resistance is overcome by force or fear, *or under other prohibitive conditions*." *Black's Law Dictionary* 1260 (6th ed. 1990) (emphasis added); *accord Castro-Baez v. Reno*, 217 F.3d 1057, 1059 (9th Cir. 2000).  Lack of consent may be satisfied when the victim does not assent to the sexual act. There may also be a lack of consent based on "other prohibitive conditions," even where the victim "agrees" to the sexual act.  These "other prohibitive conditions" may include the age of the victim, the victim's physical or mental condition, or other factors that negate consent.  *See Black's Law Dictionary*, *supra*, at 1260.

The issues we must now decide are how to define lack of consent generally and when a victim's mental condition amounts to a "prohibitive condition" that makes the underlying act of sexual penetration unlawful.  The prevailing view in 1996 was that a victim's mental condition is a prohibitive condition in two circumstances.  The first is where the victim's mental capacity is substantially impaired as the result of an intoxicant administered without his or her consent, typically by the defendant.  *See* Model Penal Code § 213.1(1)(b) (1980); Appendix B.  The second circumstance is where the victim is incapable of giving consent as a result of a mental disease or defect, and the defendant knew or had reason to know of the victim's condition.  *See* Model Penal Code § 213.1(2)(b); Appendix C.

The Ohio statute under which the respondent was convicted is structured to include these two circumstances. Ohio law defines rape as the commission of the relevant sexual act where either (1) the victim's mental capacity is substantially impaired as the result of an intoxicant administered without his or her consent by the defendant or (2) the victim's mental capacity is substantially impaired and the defendant knew or had reason to know of the impairment.  Ohio Rev. Code Ann. §§ 2907.02(A)(1)(a), (c) (West 2011).[10] There is no dispute that the respondent's conviction was based on a violation involving the latter circumstance.

The respondent argues that the generic concept of rape limits the application of a "substantial impairment" standard to situations in which an intoxicant has been administered to the victim without consent.  He contends that in cases that do not involve the administration of an intoxicant but are instead premised on the victim's mental ability to consent, a higher standard of being "incapable" of consent applies.  According to the respondent, a victim's mental capacity may be substantially impaired, yet the condition

---

[10]  The commission of a rape in the first circumstance is punished more severely under section 2907.02(B) of the Ohio Revised Code Annotated.

may not be so severe as to render the victim "incapable" of consenting. This assertion is premised on the fact that in 1996, both an overwhelming majority of jurisdictions and the Model Penal Code used the term "incapable" when defining this prohibitive condition, including such phrases as "incapable of providing consent," "incapable of appraising," or "incapable of appreciating."

It is not clear what meaning the respondent ascribes to the concept of being "incapable" of consenting. *See* Model Penal Code § 213.1 cmt 5(c) at 321 (1980) ("Some statutes merely specify that the impairment must be such as to render the victim 'Incapable of giving consent,' a formulation that avoids rather than answers the essential question." (footnote omitted)). The respondent appears to attribute to this term a meaning that requires complete incapacitation, or an inability to vocalize consent. However, such an interpretation is flatly at odds with the consensus in 1996. *See id.* cmt 1 at 276 (rejecting as too narrow a prohibitive condition that requires the victim to suffer "from extreme retardation or some catastrophic psychological disability [that renders him or her] incapable of expressing a judgment in the sense of saying 'yes'").

We do not interpret the term "incapable" as indicating an absolute inability to consent, because such a construction would be inconsistent with the context in which the term is used. As previously noted, in 1996 numerous States required that the victim's mental condition rendered him or her incapable of giving *effective or meaningful consent.*[11] *See id.* (acknowledging that "[r]ape [has been] extended to situations where the woman was incapable of meaningful consent"). That is, the victim's mental condition had to prevent him or her from making a reasonable judgment about the nature and consequences of the underlying sexual act. *See id.* § 2.11(3)(b) (providing that consent is ineffective when "given by a person

---

[11] *See* Cal. Penal Code §§ 261(a)(1) (requiring that the victim be "incapable . . . of giving legal consent"); Idaho Code § 18-6101(2) (requiring that the victim be "incapable, through any unsoundness of mind, whether temporary or permanent, of giving legal consent"); Ind. Code § 35-42-4-1 (requiring that the victim be "so mentally disabled or deficient that consent to sexual intercourse cannot be given"); Iowa Code Ann. § 709.1(2) (applying to situations in which the victim is "suffering from a mental defect or incapacity which precludes giving consent"); Minn. Stat. §§ 609.341(6), .342(1)(e)(ii), .344(1)(d) (providing that the victim's mental condition must be such that it causes him or her to "lack[] the judgment to give a reasoned consent to sexual contact or sexual penetration"); Okla. Stat. tit. 21, § 1111(A)(2) (requiring that the victim be "incapable through mental illness or any other unsoundness of mind, whether temporary or permanent, of giving legal consent"); S.D. Codified Laws § 22-22-1(3); *see also People v. Burpo*, 647 N.E.2d 996, 1002 (Ill. 1995); *Stadler v. State*, 919 P.2d 439, 441 (Okla. Crim App. 1996); *State v. Fox*, 31 N.W.2d 451, 454-55 (S.D. 1948).

who by reason of youth, mental disease or defect or intoxication is . . . unable to make a reasonable judgment as to the nature or harmfulness of the conduct").[12]

Such an approach is also consistent with the numerous States that, in 1996, defined the victim as being "incapable of appraising" or "incapable of appreciating" the nature of his or her conduct.[13] As New York's highest court has explained, "An ability to 'appraise' is, of course, a qualitative matter, all the more so when the appraisal is one to be made of the 'nature' of 'conduct', with the variety of factors that the one 'appraising' may have to take into account for such purposes." *People v. Easley*, 364 N.E.2d 1328, 1332 (N.Y. Ct. App. 1977). In other words, the term "incapable" lacks an unconditional quality when used in conjunction with relative concepts like "appraising" or "appreciating." *See People v. Ardila*, 647 N.E.2d 1355, 1355–56 (N.Y. Ct. App. 1995). The pivotal question is whether the victim is "*substantially able* to understand what she was doing." *Easley*, 364 N.E.2d at 1332 (emphasis added).[14]

---

[12] *See* 720 Ill. Comp. Stat. 5/12-13(a)(2); Minn. Stat. Ann. § 609.341(6) (1996) (providing that mental impairment deprives the victim of the ability "to give a reasoned consent"); Mo. Rev. Stat. § 556.061(5) (providing that a victim lacks capacity to consent where he or she is "unable to make a reasonable judgment"); *State v. Ortega-Martinez*, 881 P.2d 231, 236−37 (Wash. 1994) (stating that a victim lacks capacity to consent where he or she is not able to meaningfully understand the nature or consequences of sexual intercourse).

[13] Ala. Code §§ 13A-6-60(5), -62(a)(2); Alaska Stat. Ann. § 11.41.470(4); Ariz. Rev. Stat. § 13-1401(A)(5)(b); Ark. Code Ann. § 5-14-101(3)(A); Colo. Rev. Stat. § 18-3-403(1)(c) (1996); Conn. Gen. Stat. § 53a-65(4); Del. Code Ann. tit. 11, § 761(g)(3); Fla. Stat. Ann. § 794.011(1)(b); Haw. Rev. Stat. §§ 702-235(2), 707-700 (1996) (defining "mentally defective"); Kan. Stat. Ann. § 21-3502(a)(1)(C); La. Rev. Stat. Ann. § 14:43(A)(2); Mich. Comp. Laws §§ 750.520a(f), .520d(1)(c); Miss. Code Ann. § 97-3-97(b); Mont. Code Ann. §§ 45-2-101(39), -5-501(1)(b)(i); Neb. Rev. Stat. § 28-319(1)(b); Nev. Rev. Stat. § 200.366(1); N.J. Stat. Ann. §§ 2C:14-1(h), -2(c)(2); N.M. Stat. Ann. §§ 30-9-10(A)(4), -11(E); N.Y. Penal Law §§ 130.00(5), .05(2)(b), .05(3)(b), .25(1); N.D. Cent. Code § 12.1-20-03(1)(e); Or. Rev. Stat. §§ 163.305(3), .375(1)(d); 18 Pa. Cons. Stat. § 3121(5); R.I. Gen. Laws §§ 11-37-1(4), -2(1); S.C. Code Ann. §§ 16-3-651(e), -654(1)(b); Tenn. Code Ann. §§ 39-13-501(3), 39-13-503(a)(3); Tex. Penal Code Ann. §§ 22.011(a)(1), (b)(4); Utah Code Ann. §§ 76-5-402(1), -406(6); Vt. Stat. Ann. tit. 13, §§ 3252(a)(1)(A), 3254(2)(A), 3254(2)(D); Va. Code Ann. §§ 18.2-61(A)(ii), -67.10(3); Wash. Rev. Code §§ 9A.44.010(4), .050(1)(b); W. Va. Code §§ 61-8B-1(3), -5(a)(1); Wis. Stat. § 940.225(2)(c); Wyo. Stat. Ann. § 6-2-302(a)(iv); *see also* N.H. Rev. Stat. Ann. § 632-A:2(I)(h); *State v. Degrenier*, 424 A.2d 412, 413–14 (N.H. 1980) (interpreting a prior version of the statute).

[14] *See also, e.g.*, *Brooks v. State*, 555 So. 2d 1134, 1136 (Ala. Crim. App. 1989); *People v. Vukodinovich*, 189 Cal. Rptr. 3d 126, 133−34 (Ct. App. 2015); *State v. Dudley*, 64 So. 3d 746, 752 (Fla. Dist. Ct. App. 2011); *Ely v. State*, 384 S.E.2d 268, 271−72 (Ga. Ct. App. 1989); *People v. Breck*, 584 N.W.2d 602, 604 (Mich. Ct. App. 1998); *State v. Frost*, 686

There is no meaningful distinction between these approaches and those adopted by States, such as Ohio, that consider victims to have a prohibitive condition if their ability to appraise the nature of the sexual act is "substantially impaired." [15]  Contrary to the respondent's assertions on appeal, this provision of Ohio law does not apply to *any* reduction or diminution in the victim's ability to appraise the nature of the sexual activity—the impairment must be *substantial*. *See, e.g.*, *State v. Noernberg*, No. 97126, 2012 WL 1649806 (Ohio Ct. App. May 10, 2012); *State v. Hatten*, 927 N.E.2d 632, 638–41 (Ohio Ct. App. 2010).  Requiring that the victim's impairment be substantial is essentially synonymous with requiring that the impairment be of such a degree as to deprive the victim of the ability to provide meaningful consent.  As discussed, a victim who is not capable of providing meaningful consent is "incapable of consent," as that phrase was commonly understood in 1996.

## IV.  CONCLUSION

We conclude that the term "rape" in section 101(a)(43)(A) of the Act encompasses (1) an act of vaginal, anal, or oral intercourse or digital or mechanical penetration, no matter how slight, that (2) is committed without consent. [16]  We will therefore affirm the Immigration Judge's determination that the respondent is removable on the basis of his conviction for aggravated felony rape under section 101(a)(43)(A) of the Act.  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

---

A.2d 1172, 1175 (N.H. 1996); *State v. Mosbrucker*, 758 N.W.2d 663, 668 (N.D. 2008); *Stadler v. State*, 919 P.2d 439, 441 (Okla. 1996); *Commonwealth v. Rhodes*, 510 A.2d 1217, 1225 (Pa. 1986).

[15] Ohio Rev. Code Ann. § 2907.02(A)(1)(c); *see also* Me. Rev. Stat. Ann. tit. 17-A, § 253(2)(C); Md. Ann. Code art. 27, §§ 461(b), 463(2); N.C. Gen. Stat. §§ 14-27.1(1)(ii), .3(a)(2).

[16] As previously noted, this formulation is not exhaustive of all potential issues that could arise in trying to define the various types of sexual acts encompassed by the consensus of State and Federal law in 1996 regarding the meaning of the term "rape."  *See supra* note 2; *see also supra* notes 8–9.  Nor does it comprehensively set forth all forms of the concept of "lack of consent" that can possibly underlie a rape offense.

## APPENDIX A

This table lists the relevant offenses criminalizing digital and mechanical penetration when "rape" was added to section 101(a)(43)(A) of the Act in 1996. Kentucky, Maine, North Dakota, and Utah are the four States that proscribed mechanical, but not digital, penetration.

| | |
|---|---|
| Alaska | Alaska Stat. § 11.41.410 (Michie 1996) (defining certain acts of sexual penetration as "sexual assault in the first degree"); § 11.41.420 ("sexual assault in the second degree"); § 11.81.900(b)(55)(A) (defining "sexual penetration") |
| Arizona | Ariz. Rev. Stat. § 13-1401(3) (1996) (defining "sexual intercourse"); § 13-1406(A) (defining certain acts of sexual intercourse or oral sexual contact as "sexual assault") |
| Arkansas | Ark. Code Ann. § 5-14-101(1)(B) (Michie 1996) (defining "deviate sexual activity"); § 5-14-103 (defining certain acts of sexual intercourse or deviate sexual activity as "rape") |
| Colorado | Colo. Rev. Stat. § 18-3-402 (1996) (defining certain acts of sexual intrusion or sexual penetration as "sexual assault in the first degree"); § 18-3-403 ("sexual assault in the second degree"); § 18-3-401(5) (defining "sexual intrusion") |
| Connecticut | Conn. Gen. Stat. § 53a-65(2) (1996) (defining "sexual intercourse"); § 53a-70 (defining certain acts of sexual intercourse as "sexual assault in the first degree"); § 53a-71 ("sexual assault in the second degree"); *State v. Grant*, 634 A.2d 1181, 1186 (Conn. App. Ct. 1993) (concluding that digital penetration is penetration by an "object") |
| District of Columbia | D.C. Code Ann. § 22-4101(8)(C) (1996) (defining "sexual act"); § 22-4102 (defining "first degree sexual abuse" as engaging in a sexual act under certain circumstances); § 22-4103 ("second degree sexual abuse") |
| Florida | Fla. Stat. Ann. § 794.011(1)(h) (West 1996) (defining the sexual acts that constitute "sexual battery"); *Kirby v. State*, 625 So. 2d 51, 55 (Fla. Dist. Ct. App. 1993) (providing that digital penetration is included in the definition of "sexual battery") |

| | |
|---|---|
| Hawaii | Haw. Rev. Stat. § 707-700 (1996) (defining "sexual penetration"); § 707-730 (defining certain acts of sexual penetration as "sexual assault in the first degree"), 707-731 ("sexual assault in the second degree"); § 707-732(1)(a) ("sexual assault in the third degree") |
| Illinois | 720 Ill. Comp. Stat. 5/12-12(f) (West 1996) (defining "sexual penetration"); 5/12-13 (defining certain acts of sexual penetration that constitute "criminal sexual assault"); 5/12-14 ("aggravated criminal sexual assault") |
| Iowa | Iowa Code § 702.17 (defining "sex act") (1996); § 709.1 (defining "sexual abuse" as the commission of a sex act under certain circumstances); § 709.2 ("sexual abuse in the first degree"); § 709.3 ("sexual abuse in the second degree"); § 709.4 ("sexual abuse in the third degree") |
| Kansas | Kan. Stat. Ann. § 21-3501(1) (1996) (defining "sexual intercourse"); § 21-3502(a) (defining certain acts of sexual intercourse as "rape") |
| Kentucky | Ky. Rev. Stat. Ann. § 510.010(8) (Michie 1996) (defining "sexual intercourse" to include penetration by a foreign object); § 510.040(1) (defining "rape in the first degree"); § 510.050 ("rape in the second degree"); § 510.060 ("rape in the third degree"); § 510.070 ("sodomy in the first degree"); *Cotton v. Commonwealth*, No. 2008-SC-000516-MR, 2010 WL 2025125, at *3 (Ky. May 20, 2010) (providing that rape entails mechanical, but not digital, penetration) |
| Maine | Me. Rev. Stat. Ann. tit. 17-A, § 251(1)(C) (West 1996) (defining "sexual act"); § 253 (defining "gross sexual assault" as the commission of a sexual act under certain circumstances); *State v. Walker*, 512 A.2d 354, 356 (Me. 1986) (suggesting that digital penetration is not included) |
| Massachusetts | Mass. Gen. Laws ch. 265, § 22 (1996) (defining certain acts of sexual intercourse or unnatural sexual intercourse as "rape"); § 23 ("rape of a child"); *Commonwealth v. Gallant*, 369 N.E.2d 707, 712 (Mass. 1977) (providing that "unnatural sexual intercourse" includes, among other things, digital and mechanical penetration) |
| Michigan | Mich. Comp. Laws § 750.520a(l) (1996) (defining "sexual penetration"); § 750.520b (defining certain acts of sexual penetration as "criminal sexual conduct in the first degree"); § 750.520d ("criminal sexual conduct in the third degree") |

| | |
|---|---|
| Minnesota | Minn. Stat. § 609.341(12)(2)(i) (1996) (defining "sexual penetration"); § 609.342 (defining acts of sexual penetration as "criminal sexual conduct in the first degree"); § 609.343(1) ("criminal sexual conduct in the second degree") |
| Montana | Mont. Code Ann. § 45-2-101(66) (1996) (defining "sexual intercourse"); § 45-5-503 (defining certain acts of sexual intercourse as "sexual intercourse without consent") |
| Nebraska | Neb. Rev. Stat. § 28-318(6) (1996) (defining "sexual penetration"); § 28-319 (defining certain acts of sexual penetration as "sexual assault") |
| Nevada | Nev. Rev. Stat. § 200.364(2) (1996) (defining "sexual penetration"); § 200.366 (defining certain acts of sexual penetration as "sexual assault") |
| New Hampshire | N.H. Rev. Stat. Ann. § 632-A:1(V)(e) (1996) (defining "sexual penetration"); § 632-A:2 (defining certain acts of sexual penetration as "aggravated felonious sexual assault") |
| New Jersey | N.J. Stat. Ann. § 2C:14-1(c) (West 1996) (defining "sexual penetration"); § 2C:14-2 (defining certain acts of sexual penetration as "sexual assault") |
| New Mexico | N.M. Stat. Ann. § 30-9-11 (Michie 1996) (defining "criminal sexual penetration"); *State v. Lente*, 119 P.3d 737, 742 (N.M. Ct. App. 2005) (affirming a conviction for criminal sexual penetration based on digital penetration) |
| North Dakota | N.D. Cent. Code §§ 12.1-20-02(2), (3) (1996) (defining "sexual act" and "object"); § 12.1-20-03 (defining "gross sexual imposition" as the commission of a sexual act under certain circumstances) |
| Ohio | Ohio amended its rape laws to include digital and mechanical penetration on September 3, 1996, just weeks before Congress included "rape" in section 101(a)(43)(A) of the Act. *See* H.B. 445, 121st Gen. Assemb., 1996 Ohio Laws File 155 (codified at Ohio Rev. Code Ann. §§ 2907.01(A) (Anderson 1996)) (defining "sexual conduct"), 2907.02 (defining certain acts of sexual conduct as "rape") (effective Sept. 3, 1996). |
| Oklahoma | Okla. Stat. tit. 21, § 1111 (1996) (defining certain acts of vaginal or anal penetration as "rape"); § 1111.1 (defining "rape by instrumentation") |

| | |
|---|---|
| Rhode Island | R.I. Gen. Laws § 11-37-1(8) (1996) (defining "sexual penetration"); § 11-37-2 (defining certain acts of sexual penetration as "first degree sexual assault") |
| South Carolina | S.C. Code Ann. § 16-3-651(h) (Law. Co-op. 1996) (defining "sexual battery"); § 16-3-652 (defining certain acts of sexual battery as "criminal sexual conduct in the first degree"); § 16-3-653 ("criminal sexual conduct in the second degree"); § 16-3-654 ("criminal sexual conduct in the third degree") |
| South Dakota | S.D. Codified Laws § 22-22-1 (Michie 1996) (defining certain acts of sexual penetration as "rape"); § 22-22-2 (defining "sexual penetration") |
| Tennessee | Tenn. Code Ann. § 39-13-501(7) (1996) (defining "sexual penetration"); § 39-13-502 (defining certain acts of sexual penetration as "aggravated rape"); § 39-13-503 ("rape") |
| Texas | Tex. Penal Code Ann. § 22.011(a)(1)(A) (West 1996) (defining certain acts of penetration as "sexual assault"); § 22.021(a)(1)(A) ("aggravated sexual assault") |
| Utah | Utah Code Ann. § 76-5-402.2 (1996) (defining "object rape"); § 76-5-402.3 ("object rape of a child") |
| Vermont | Vt. Stat. Ann. tit. 13, § 3251(1) (1996) (defining "sexual act"); § 3252 (defining certain types of sexual acts as "sexual assault"); § 3253 ("aggravated sexual assault") |
| Washington | Wash. Rev. Code § 9A.44.010(1)(b) (1996) (defining "sexual intercourse"); § 9A.44.040 (defining certain acts of sexual intercourse as "rape in the first degree"); § 9A.44.050 ("rape in the second degree"); § 9A.44.060 ("rape in the third degree"); *State v. Cain*, 624 P.2d 732, 734 (Wash. 1981) (providing that digital penetration is included in the definition of "sexual intercourse") |
| West Virginia | W. Va. Code § 61-8B-1(8) (1996) (defining "sexual intrusion"); § 61-8B-3(defining certain acts of sexual intercourse or sexual intrusion as "sexual assault in the first degree"); § 61-8B-4 ("sexual assault in the second degree"); § 61-8B-5 ("sexual assault in the third degree"); *State v. Emerson*, No. 13-0571, 2014 WL 1672953, at *3 (W. Va. Apr. 25, 2014) (concluding that digital penetration is included in the definition of "sexual intrusion") |

| Wisconsin | Wis. Stat. §§ 940.225(1)-(3) (1996) (defining certain acts of sexual intercourse as "sexual assault" in various degrees); § 940.225(5)(c) (defining "sexual intercourse") |
| --- | --- |
| Wyoming | Wyo. Stat. Ann. § 6-2-301(a)(vii)(A) (Michie 1996) (defining "sexual intrusion"); § 6-2-302 (defining certain acts of sexual intrusion as "sexual assault in the first degree"); § 6-2-303 ("sexual assault in the second degree"); § 6-2-304 ("sexual assault in the third degree") |

APPENDIX B

This table lists the relevant offenses that define a lack of consent as including an impaired mental state as the result of an intoxicant when "rape" was added to section 101(a)(43)(A) of the Act in 1996. Comparable Federal statutes punished similar conduct. *See* 18 U.S.C. § 2241(b)(2).

| | |
|---|---|
| Alabama | Ala. Code §§ 13A-6-60(6), -61(a)(2) (1996) |
| Alaska | Alaska Stat. §§ 11.41.410(a)(1), .470(8)(b) |
| Arkansas | Ark. Stat. Ann. §§ 5-14-101(4), -1039(a)(4) |
| California | Cal. Penal Code § 261(a)(3) (West 1996) |
| Colorado | Colo. Rev. Stat. § 18-3-402(1)(d) |
| Connecticut | Conn. Gen. Stat. §§ 53a-65(5), -71(a)(2) |
| Delaware | Del. Code Ann. tit. 11, §§ 773(a)(1), 774(a)(2), 775(a)(2), 761(g)(5) (1996) |
| District of Columbia | D.C. Code Ann. § 22-4102(4) |
| Hawaii | Haw. Rev. Stat. §§ 707-700, -731(1)(b) (defining "mentally incapacitated") |
| Idaho | Idaho Code § 18-6101(4) (1996) |
| Kentucky | Ky. Rev. Stat. Ann. §§ 510.010(5), .060(1)(a) |
| Louisiana | La. Rev. Stat. Ann. §§ 14:41(A), 14:43(A)(1) (West 1996) |
| Maine | Me. Rev. Stat. Ann. tit. 17-A, § 253(2)(A) |
| Maryland | Md. Ann. Code art. 27, §§ 461(c), 463(2) (1996) |
| Michigan | Mich. Comp. Laws §§ 750.520a(g), .520b(1)(h), .520d(1)(c) |
| Minnesota | Minn. Stat. §§ 609.341(7), .342(1)(e)(ii), .344(1)(d) |
| Mississippi | Miss. Code Ann. § 97-3-65(2) (1996); *see also* §§ 97-3-95(1)(b), -97(c) |
| Montana | Mont. Code Ann. §§ 45-2-101(40), -5-501(1)(b)(i), -5-503(1) |
| New Hampshire | N.H. Rev. Stat. Ann. § 632-A:2(I)(f) |
| New Jersey | N.J. Stat. Ann. §§ 2C:14-1(i), -2(c)(2) |
| New York | N.Y. Penal Law §§ 130.00(6), .05(2)(b), (3)(c), .25(1) (McKinney 1996) |
| North Carolina | N.C. Gen. Stat. §§ 14-27.1(2), .3(a)(2) (1996) |
| North Dakota | N.D. Cent. Code § 12.1-20-03(1)(b) |
| Ohio | Ohio Rev. Code. Ann. § 2907.02(A)(1)(a) |
| Oklahoma | Okla. Stat. tit. 21, § 1111(A)(4) |

| Oregon | Or. Rev. Stat. §§ 163.305(4), .375(1)(d) (1996) |
|---|---|
| Pennsylvania | 18 Pa. Cons. Stat. § 3121(4) (1996) |
| Rhode Island | R.I. Gen. Laws §§ 11-37-1(5), -2(1) |
| South Carolina | S.C. Code Ann. §§ 16-3-651(f), -654(1)(b) |
| South Dakota | S.D. Codified Laws § 22-22-1(4) |
| Tennessee | Tenn. Code Ann. §§ 39-13-501(4), -503(a)(3) |
| Texas | Tex. Penal Code Ann. §§ 22.011(a), (b)(6) |
| Utah | Utah Code Ann. §§ 76-5-402(1), -406(8) |
| Vermont | Vt. Stat. Ann. tit. 13, § 3252(a)(2) |
| West Virginia | W. Va. Code §§ 61-8B-1(4), -5(a)(1) |
| Wyoming | Wyo. Stat. Ann. § 6-2-303(a)(iii) |

APPENDIX C

This table lists the relevant offenses defining lack of consent to include "incapacity to consent" when "rape" was added to section 101(a)(43)(A) of the Act in 1996. Comparable Federal statutes punished similar conduct. *See* 18 U.S.C. § 2242(2)(A).

| | |
|---|---|
| Alabama | Ala. Code §§ 13A-6-60(5), -62(a)(2) |
| Alaska | Alaska Stat. Ann. §§ 11.41.420(a)(3)(A), .470(2), (4) |
| Arizona | Ariz. Rev. Stat. §§ 13-1401(5)(b), -1406(A) |
| Arkansas | Ark. Code. Ann. §§ 5-14-101(3)(A), -103(4) |
| California | Cal. Penal Code § 261(a)(1) |
| Colorado | Colo. Rev. Stat. § 18-3-403(1)(c) |
| Connecticut | Conn. Gen. Stat. §§ 53a-65(4), -71(a)(2) |
| Delaware | Del. Code Ann. tit. 11, §§ 773(a)(1), 774(a)(2), 775(a)(2), 761(g)(3) |
| District of Columbia | D.C. Code Ann. § 22-4103(2)(A) |
| Florida | Fla. Stat. Ann. § 794.011(1)(b), (4)(e) |
| Georgia | Ga. Code Ann. § 16-6-1(a) (1996); *Ely v. State*, 384 S.E.2d 268, 271 (Ga. Ct. App. 1989) |
| Hawaii | Haw. Rev. Stat. §§ 707-700, -731(1)(b) (defining "mentally defective") |
| Idaho | Idaho Code § 18-6101(2) |
| Illinois | 720 Ill. Comp. Stat. 5/12-13(a)(2) |
| Indiana | Ind. Code § 35-42-4-1(3) (1996) |
| Iowa | Iowa Code §§ 709.1(2), 709.4(2)(a) |
| Kansas | Kan. Stat. Ann. § 21-3502(a)(1)(C) |
| Kentucky | Ky. Rev. Stat. Ann. §§ 510.010(4), .060(1)(a) |
| Louisiana | La. Rev. Stat. Ann. §§ 14:41(A), :43(A)(1), (2) |
| Maine | Me. Rev. Stat. Ann. tit. 17-A, § 253(2)(C) |
| Maryland | Md. Ann. Code art. 27, §§ 461(b), 463(2) |
| Michigan | Mich. Comp. Laws §§ 750.520a(f), .520b(1)(h), .520d(1)(c) |
| Minnesota | Minn. Stat. §§ 609.341(6), .342(1)(e)(ii), .344(1)(d) |
| Montana | Mont. Code Ann. §§ 45-2-101(39), -5-501(1)(b)(i), -5-503(1) |
| Nebraska | Neb. Rev. Stat. § 28-319(1)(b) |
| Nevada | Nev. Rev. Stat. § 200.366(1) |
| New Hampshire | N.H. Rev. Stat. Ann. § 632-A:2(I)(h); *State v. Degrenier*, 424 A.2d 412, 413–14 (N.H. 1980) |

| New Jersey | N.J. Stat. Ann. §§ 2C:14-1(h), -2(c)(2) |
|---|---|
| New Mexico | N.M. Stat. Ann. §§ 30-9-10(A)(4), -11(E) |
| New York | N.Y. Penal Law §§ 130.00(5), .05(2)(b), .05(3)(b), .25(1) |
| North Carolina | N.C. Gen. Stat. §§ 14-27.1(1)(ii), .3(a)(2) |
| North Dakota | N.D. Cent. Code § 12.1-20-03(1)(e) |
| Ohio | Ohio Rev. Code. Ann. § 2907.02(A)(1)(c) |
| Oklahoma | Okla. Stat. tit. 21, § 1111(A)(2) |
| Oregon | Or. Rev. Stat. §§ 163.305(3), .375(1)(d) |
| Pennsylvania | 18 Pa. Cons. Stat. § 3121(5) |
| Rhode Island | R.I. Gen. Laws §§ 11-37-1(4), -2(1) |
| South Carolina | S.C. Code Ann. §§ 16-3-651(e), -654(1)(b) |
| South Dakota | S.D. Codified Laws § 22-22-1(3) |
| Tennessee | Tenn. Code Ann. §§ 39-13-501(3), -503(a)(3) |
| Texas | Tex. Penal Code Ann. §§ 22.011(a)(1), (b)(4) |
| Utah | Utah Code Ann. §§ 76-5-402(1), -406(6) |
| Vermont | Vt. Stat. Ann. tit. 13, §§ 3252(a)(1)(A), 3254(2)(A), 3254(2)(D) |
| Virginia | Va. Code Ann. §§ 18.2-61(A)(ii), -67.10(3) (Michie 1996) |
| Washington | Wash. Rev. Code §§ 9A.44.010(4), .050(1)(b) |
| West Virginia | W. Va. Code §§ 61-8B-1(3), -5(a)(1) |
| Wisconsin | Wis. Stat. § 940.225(2)(c) |
| Wyoming | Wyo. Stat. Ann. § 6-2-302(a)(iv) |
| Others | In addition to having a crime labeled "rape," other States punished the act of sexual penetration without consent. *See* Miss. Code Ann. §§ 97-3-95(1)(b), -97(b); Mo. Rev. Stat. §§ 566.040(1), .061(5)(a), (b) (1996) |