STATE of Wisconsin, Plaintiff-Respondent,

v.

Ivan MENDEZ, Defendant-Appellant.

Court of Appeals

*No. 2013AP1862. Submitted on briefs March 19, 2014.
—Decided April 9, 2014.*

2014 WI App 57

(Also reported in 847 N.W.2d 895.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David Ziemer* of Glendale and *Mark E. Christopher* of *Christopher Law Office, LLC*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Nancy A. Noet*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. BROWN, C.J.    Ivan Mendez seeks to withdraw his guilty plea to the charge of maintaining a drug trafficking place in violation of WIS. STAT. § 961.42(1) (2011–12).[1] At the time of his plea, Mendez's attorney failed to inform him that conviction of this charge would subject him to automatic deportation from the United States with no applicable exception and no possibility of discretionary waiver. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II)  (2006); *see also Padilla v. Kentucky*, 559 U.S. 356, 363 (2010) (explaining that in 1996 Congress eliminated discretionary relief from deportation and that for controlled substance convictions like Mendez's "removal is practically inevitable"). The circuit court recognized that Mendez's counsel was defi-

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

89

cient in failing to tell Mendez about these clear deportation consequences. The court rejected Mendez's motion, however, reasoning that Mendez could not establish that his counsel's error prejudiced his case because he did not show that "there would be a different outcome" or that he had "real and viable challenges to the underlying veracity of the conviction."

¶ 2.   As we read *Padilla*, it is evident that the circuit court applied the wrong standard in assessing prejudice. Under *Padilla*, counsel's failure to advise a defendant concerning clear deportation consequences of his plea bargain is prejudicial if the defendant shows that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. We reverse and remand with directions that the circuit court apply the correct *Padilla* standard.

¶ 3.   Ivan Mendez[2] came to the United States in 1997, when he was fourteen years old. He never returned to Mexico. He and his United States citizen wife have a United States citizen child who was four years old at the time of the hearing on this motion. In May 2011, Mendez was charged with possession with intent to deliver THC and maintaining a drug trafficking place, when he was the driver of a vehicle from which another man conducted a sale of marijuana to undercover police officers. Mendez denied knowledge of the drug deal, claiming that he had agreed to give the friend a ride but did not know about the drugs. That defense was undermined by the other man's statements implicating Mendez and by the discovery of one of Mendez's fingerprints on the exterior of one of the baggies of marijuana.

---

[2] From the record, it appears that Mendez's full name may be Ivan Mendez Mercado. We refer to him by the name that appears in the caption of this case and in his own briefs on appeal.

¶ 4. Mendez's attorney knew that Mendez was not a United States citizen and that his wife was. He did not recall discussing potential immigration consequences of the plea with Mendez until the plea date itself. The attorney testified that, on the plea date, "there would have been a discussion concerning his immigration status certainly at the . . . point in the questionnaire where we were discussing the probable consequences of his plea." However, at the time, the attorney testified that he was unaware that under immigration law, Mendez's conviction for this drug crime would render him automatically deportable. Thus he did not advise Mendez that he would be deported if he pled guilty to this charge. Instead he "basically" reiterated the general warning on the plea questionnaire, that "a conviction may make [the defendant] inadmissible or deportable."

¶ 5. Mendez's trial counsel further testified that though it was his usual practice in such circumstances to refer a client to an immigration attorney for further advice, he had no record or memory of having given Mendez such a referral. He also said that at the time of the plea, he thought the State's initial offer, which had included a prison sentence, would definitely make Mendez subject to deportation. Once it became clear that the State would not reduce the charge to a misdemeanor, his focus became reducing the felony charge as low as possible and securing a recommendation of no prison or jail time. The charge to which Mendez ultimately pled carries a sentence of up to three years of imprisonment, but the State agreed to recommend probation. At the plea withdrawal hearing, the attorney acknowledged that if Mendez had been properly informed that his conviction would make him automatically deportable "[h]e would have to make a difficult decision" as to whether to risk prison for the chance of avoiding deportation.

¶ 6. Mendez testified at the hearing that he had asked his attorney twice about whether the felony conviction would affect his ability "to get a green card"[3] but that the attorney said he did not know. He also said that his attorney never provided him any referral to an immigration attorney. Mendez acknowledged that he understood the warning given at the plea hearing, that his conviction could affect his immigration status, but that it "did not specify that I would be deported" and that if it had "I would have fought the case to the end." He continued to deny committing the crimes and said that he would have been willing to face a risk of prison time in order to have "a chance to stay" in the United States. Specifically, he said, he would have risked the maximum penalty on the two counts he was facing, six years on the first count and three and a half on the second.[4] He testified that in addition to wishing to remain with his family here, he also fears deportation because the family of the man who sold the drugs believes Mendez testified against the codefendant and has been asking questions about him in Mexico.

¶ 7. In response to questioning by the circuit court, Mendez acknowledged that he understood that it was a "possibility" his plea could affect his citizenship but claimed that he thought the fact that he was married to a United States citizen would still enable him to pursue citizenship. He testified that he was on probation when the immigration service came to his

[3] The phrase "green card" is a common way of referring to a Resident Alien Card, the document that certifies that an alien has the permanent right to remain in the United States. *United States v. Reneslacis*, 349 F.3d 412, 414 (7th Cir. 2003).

[4] While Mendez therefore faced a total sentence of nine and one-half years, the maximum initial confinement he faced was four and one-half years. Wis. Stat. § 973.01(2)(b).

92

home and arrested him to put him into deportation proceedings as a result of his plea. His wife testified at the plea withdrawal hearing that she was unaware of any immigration consequences brought to her husband's attention by his attorney during the criminal proceedings and was "shocked" when the agents came to arrest Mendez while he was successfully completing his probation.

¶ 8.  At the plea withdrawal hearing, Mendez argued that both prongs of the *Strickland*[5] ineffective assistance of counsel test were met. The first prong, deficient performance, was shown by the fact that Mendez's counsel admitted on the stand that at the time of the plea he did not advise Mendez that the charge to which he was pleading would render him deportable, when that was the clear legal result under immigration law. The second prong, prejudice, was shown by the fact that Mendez had "everything to lose by not going to trial had he only been told that this conviction would make him inadmissible and deportable," i.e., that the plea meant he would never be able to live with his family in the United States.

¶ 9.  In its briefing to the court, the State had argued that the first prong was unmet because counsel did not give false or inaccurate information but failed to provide complete information. The State also made the argument that deportation was not an "absolute certainty" at the time of Mendez's plea, because probation meant he was not transferred directly into State custody but was out on probation. Additionally the State argued that prejudice was not established because "the Defendant has not shown that but for the errors made by trial counsel, the result of the Defendant's trial

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

would have been different." At the hearing, the State only argued the prejudice prong, continuing to assert that the fact that this was an automatically deportable offense did not mean that deportation was a certainty, because "[immigration service] protocol and enforcement is frankly subject to change" and that "the fact that the defendant was not facing any jail time decreased the likelihood that" he would be taken into immigration custody.

¶ 10. The court in its analysis said that the focus was the second prong, prejudice. The court implicitly rejected the State's arguments concerning the uncertainty as to whether or when immigration authorities might deport Mendez, explaining that "[t]here is an affirmative duty if it's clear that the offense is a deportable one that the individual has to be informed by counsel of that occurrence." Mendez's counsel did not fulfill that duty.

¶ 11. In determining whether counsel's error was prejudicial, the court articulated the question as whether Mendez demonstrated "that there would be a different outcome." The court reasoned that Mendez could not overcome the "underlying factual predicate" for the complaint. In the court's view, "[i]t's not enough to stand up and say I would have taken the case to trial and taken my shot at it." The court stated that the benefit of the plea deal, reducing the level of the penalty, rather than the fact that the penalty would be served in the United States, is what matters in measuring prejudice.

██

¶ 12. Under *Padilla*, the question in determining whether deficient counsel prejudiced a noncitizen defendant's plea deal is whether "a decision to reject the plea bargain would have been rational under the cir-

cumstances." *Padilla*, 559 U.S. at 372. The record does not show that the circuit court analyzed that question. "[A]s a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 364 (footnote omitted). Mendez has lived in the United States since he was fourteen years old, longer than he ever lived in Mexico, and is married to a United States citizen here with whom he has a young child—also a United States citizen. He also asserted at the hearing that he fears retribution by his codefendant's family should he be deported to Mexico. Under *Padilla*, a court's analysis of prejudice must take those factors into account in measuring whether, properly informed of the automatic, irreversible, and permanent deportation consequences of his plea, Mendez might rationally have rejected the plea bargain in favor of trial despite the risk of four and one-half years of initial confinement. *See id.* at 372.

¶ 13.　On appeal, the State relies in large part[6] on a decision of the Missouri Court of Appeals, *Chacon v. State*, 409 S.W.3d 529 (Mo. Ct. App. 2013). There, the defendant Chacon sought to withdraw his guilty pleas to two felony charges that made his deportation, like Mendez's (and Padilla's), "virtually inevitable." *Id.* at 534. Chacon's attorney told Chacon at the time of the

---

[6] The State also cites *United States v. Shin*, 891 F. Supp. 2d 849, 857–58 (N.D. Ohio 2012), which applied the wrong standard, finding no prejudice because "accepting the plea was certainly a rational choice," without explaining whether rejecting the plea may also have been rational. *Shin* is also distinguishable from Mendez's case (and Padilla's for that matter) because the deportation consequences of the tax charges against Shin were not clear at the time of his plea. *Id.* at 856.

plea that the conviction meant he "would very likely be deported and wouldn't be able to come back." *Id.* at 536. The Missouri Court of Appeals decided that that advice "did not fall below what is required of a reasonably competent attorney" under *Padilla*, even though the attorney failed to advise him of clear immigration consequences. *Id.* at 537.

¶ 14.   We reject *Chacon*. Its holding is contrary to *Padilla*'s plain statement that "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369. In addition to being bad law, *Chacon* is distinguishable from Mendez's case, because while Chacon's lawyer at least told Chacon that deportation was "very likely," Mendez's lawyer gave only the same unclear warning that appears in the generic plea questionnaire, that the plea "could result in deportation."

¶ 15.   We also reject the State's reliance on *Pilla v. United States*, 668 F.3d 368 (6th Cir. 2012). Pilla, a professor and native of India, was prosecuted for making false statements to the FBI related to her false claims of having received hate mail at her university office. *Id.* at 370. The evidence against Pilla included video of her planting the letters, incriminating phone conversations, and FBI interview notes of her confession to the crimes. *Id.* at 373. In the court's prejudice analysis, there is no suggestion that Pilla had a United States spouse or child, or that she had any fears of harm upon return to India. *See id.* In these circumstances, the court rejected Pilla's writ of *coram nobis* because "no rational defendant in Pilla's position would have proceeded to trial." *Id.* The *Pilla* court's analysis does not control or even help much in Mendez's case where the record establishes Mendez's United States citizen wife and child, and fear of return to Mexico.

¶ 16. Under *Padilla*, we repeat, "a rational decision not to plead guilty does not focus solely on whether [a defendant] would have been found guilty at trial— *Padilla* reiterated that an alien defendant might rationally be more concerned with removal than with a term of imprisonment." *United States v. Orocio*, 645 F.3d 630, 643 (3d Cir. 2011), *abrogated in part on other grounds by Chaidez v. United States*, 133 S. Ct. 1103 (2013). In numerous post-*Padilla* cases, courts have concluded that despite the benefit of a great reduction in the length of the potential prison sentence, a rational noncitizen defendant might have rejected a plea bargain and risked trial for the chance at avoiding deportation. For instance, in *State v. Sandoval*, 249 P.3d 1015 (Wash. 2011), the court recognized that even though Sandoval's plea agreement reduced his penalty exposure from possible life imprisonment to a maximum of one year imprisonment, "[g]iven the severity of the deportation consequence . . . Sandoval would have been rational to take his chances at trial." *Id.*, ¶¶ 21–22. Reasoning similarly, in *Orocio*, the court concluded that a defendant might rationally have proceeded to trial even though he faced a minimum ten-year sentence:

> Mr. Orocio was only 27 years old at the time he entered the plea agreement, and he rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison.

*Orocio*, 645 F.3d at 645; *see also Denisyuk v. State*, 30 A.3d 914, 929 (Md. 2011) ("We are not alone in understanding that many noncitizens might reasonably choose the possibility of avoiding deportation combined with the risk of a greater sentence over assured deportation combined with a lesser sentence.").

¶ 17. That is the proper analysis here, too: not merely whether Mendez would have won his trial but whether in his particular circumstances, given his family in the United States and his fear of return to Mexico, he might rationally have decided to reject the plea and risked four and one-half years in prison, so as to preserve a chance of avoiding deportation.

*By the Court.*—Order reversed and cause remanded with directions.