RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID KEELEY,

*Petitioner*,

*v.*

MATTHEW G. WHITAKER, Acting Attorney General,

*Respondent*.

No. 17-4210

On Petition for Review from the Board of Immigration Appeals;
No. A 046 124 821.

Argued:  October 19, 2018

Decided and Filed:  December 17, 2018

Before:  GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge[*]

_____

### COUNSEL

**ARGUED:**  Victoria Latus, AMERICAN UNIVERSITY, Washington, D.C., for Petitioner. Karen L. Melnik, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Amanda Frost, AMERICAN UNIVERSITY, Washington, D.C., for Petitioner.  Karen L. Melnik, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Charles Roth, NATIONAL IMMIGRANT JUSTICE CENTER, Chicago, Illinois, for Amicus Curiae.

_____

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

―――――――――――

**OPINION**

―――――――――――

BERNICE BOUIE DONALD, Circuit Judge.  This case requires us to use the tools of statutory interpretation to determine whether a conviction for rape in Ohio is an aggravated felony under the Immigration and Nationality Act ("INA").  The Fifth Circuit and the Board of Immigration Appeals ("BIA") previously considered this question and answered it in the negative.  In the case before us, though, the BIA reversed course in a published decision and found that such a conviction is an aggravated felony under the INA.  On review of all the relevant materials, we disagree with the BIA.  A conviction for rape in Ohio can be committed by digital penetration, whereas the aggravated felony of rape under the INA cannot.  Therefore, the Ohio conviction does not categorically fit within the federal definition, and the petitioner's conviction is not an aggravated felony.  Accordingly, we **REVERSE**.

## I.  BACKGROUND

The petitioner David Paul Keeley ("Petitioner") is a citizen of the United Kingdom and a lawful permanent resident of the United States.  He was convicted of two counts of rape in 2011 under Ohio Rev. Code § 2907.02(A)(1)(c) and (B).[1]  Subsequently, the Department of Homeland Security charged him as being convicted of an aggravated felony under the INA and sought his removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).[2]  The INA lists rape as an aggravated felony, but it does not define the term.  *See* § 1101(a)(43)(A).  A conviction for an aggravated felony carries the most severe immigration consequence possible: removal without the possibility of relief.  § 1229b(b).

On August 8, 2016, an immigration judge found that Petitioner's conviction was an aggravated felony and held that Petitioner was removable without eligibility for relief.  Petitioner appealed the immigration judge's order to the BIA.

―――――――――――――――――――

[1]The Petitioner was also convicted of two counts of gross sexual imposition in violation of Ohio Rev. Code §§ 2907.05(A)(5) and (B), but those convictions are not at issue in this case.

[2]All further citations are to this title unless otherwise noted.

Petitioner argued in his appeal to the BIA that his Ohio conviction is not an aggravated felony because Ohio's definition of rape includes digital penetration, whereas the INA's does not.[3] The BIA disagreed. It found that the definition of rape, as used in the INA, includes digital penetration, meaning the state-crime conduct categorically fit within the federal definition. Accordingly, Petitioner had committed the aggravated felony of rape, making him ineligible for the possibility of relief from removal. Petitioner timely appealed.

## II. ANALYSIS

To determine whether Petitioner's conviction is an aggravated felony under the INA, we employ the categorical approach and make three related inquiries. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1567-68 (2017). First, we identify the minimum conduct required for a conviction of rape under the Ohio statute. *See id.* at 1568. This is easy enough as the relevant elements are defined in the statute. Second, we identify the elements of rape as it is used in the INA. *See id.* This is a more difficult task because Congress did not define the term in the statute. Therefore, we consult the resources at our disposal, including the common law, state statutes, and the Model Penal Code, to determine the elements of the generic crime at the time Congress added the term to the statute. *See Taylor v. United States*, 495 U.S. 575, 580 (1990). Third, we determine if the minimum conduct criminalized by the Ohio statute "categorically fits" within the generic crime. *Esquivel-Quintana*, 137 S. Ct. at 1568. The state conviction can only be an aggravated felony "if the least of the acts criminalized by the state statute falls within the generic federal definition of [rape]." *Id.* As set forth below, we find that the Ohio statute criminalizes digital penetration whereas the relevant generic crime does not; therefore, Petitioner's conviction is not an aggravated felony under the INA.

---

[3]Petitioner also argued before the BIA and this Court that the Ohio statute is broader than the generic crime vis-à-vis its ability-to-consent standard. Because the digital penetration issue is dispositive, we do not reach the ability-to-consent question.

**Ohio's Rape Statute**

Our first step is to identify the minimum conduct criminalized by Ohio's rape statute. *See Esquivel-Quintana*, 137 S. Ct. at 1568.[4] Petitioner was found guilty of violating a specific section of the statute,[5] which reads as follows:

> (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> . . .
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

Ohio Rev. Code § 2907.02(A)(1)(c). The Ohio statute defines "sexual conduct" to include the act of digital penetration. *Id.* § 2907.01(A). Digital penetration, therefore, is the "minimum conduct" criminalized under the Ohio statute for purposes of our inquiry.

**The Generic Definition of Rape, as Limited by the Language of the INA**

**A.**

Our second step is to identify the elements of the crime in the federal statute. Because Congress did not provide a definition of the term rape as used in § 1101(a)(43)(A), we must "give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan*, *Ltd.*, 566 U.S. 560, 566 (2012) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)). To give the term its ordinary meaning, we utilize the "normal tools of statutory interpretation," *Esquivel-Quintana*,

---

[4]Although the categorical approach is a well-worn test by now, we reiterate its defining features in this footnote in the interest of completeness. When comparing the conviction with the federal statute, we "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the term used by Congress], while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Indeed, we presume that Petitioner received his conviction based on the "minimum conduct criminalized by the state statute," and then decide whether that minimum conduct categorically falls within the ambit of the federal statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

[5]There is no dispute that this statute is divisible pursuant to *Descamps v. United States*, 570 U.S. 254, 257 (2013), so we do not consider the statute's alternative elements.

137 S. Ct. at 1569, and discern how "[the term] was commonly understood" at the time Congress used it, *Descamps*, 570 U.S. at 257. *See also Taylor*, 495 U.S. at 580 (considering the Model Penal Code, state statutes, and the common law to identify the generic definition of an undefined term). Here, Congress added rape to the INA as an aggravated felony in 1996. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-627. Therefore, we must determine whether the generic crime of rape in 1996 could be committed by digital penetration. Petitioner argues that it could not. The BIA found that it could. We agree with Petitioner.

**B.**

It is undisputed that the generic understanding of the term "rape" in 1996 did not include digital penetration. Several tribunals, including the BIA, have considered this exact proposition and concluded the same. *Perez-Gonzalez v. Holder*, 667 F.3d 622, 627 (5th Cir. 2012) (finding that digital penetration was not commonly considered rape in 1996); *In Re: Esau Rodriguez*, No. A73 692 631, 2005 WL 698373, at *5 (BIA Feb. 14, 2005) ("[W]e cannot conclude that the commonly understood meaning of the term at that time necessarily included digital penetration."); *see also Sixto Delgado*, No. A075 423 408 (BIA Jan. 2, 2015) (finding that the common law definition of rape, which does not include digital penetration, is the controlling definition for purposes of the term as it is used in the INA). Indeed, the BIA in the underlying case conceded that several of the controlling data points we consider show that the generic definition of rape does not include digital penetration: for instance, the common-law crime of rape required intercourse, the majority of state statutes criminalizing "rape" in 1996 did not include digital penetration, and the federal crime of rape (extant until 1986) did not include digital penetration. *Matter of David Paul Keeley*, 27 I&N Dec. 146, 148–51 (BIA 2017). Furthermore, the contemporary versions of Black's Law Dictionary similarly defined "rape" as not including digital penetration. *See Black's Law Dictionary* 1267 (7th ed. 1999) ("The common-law crime of rape required at least a slight penetration of the penis into the vagina."), *Black's Law Dictionary* 1260 (6th ed. 1990) ("Unlawful sexual intercourse with a female without her consent. The unlawful carnal knowledge of a woman by a man forcibly and against her will.").

Nevertheless, the BIA changed course and found that the generic crime of rape in 1996 *did* include digital penetration because, around 1996, the understanding of what constituted rape was expanding, and accordingly, rape was starting to be criminalized under more comprehensive and expansive statutes titled "sexual abuse" rather than "rape." *Matter of David Paul Keeley*, 27 I&N Dec. at 151. Because *sexual abuse* included digital penetration, the generic crime of *rape* also included digital penetration, according to the BIA. *Id.* at 151-54. As described below, this effort to shoehorn sexual abuse conduct into the bounds of rape cannot be reconciled with the language of the INA.

## C.

In its opinion, the BIA ignored the most important guiding factor to statutory interpretation—the language of the statute—which shows that Congress did not consider rape and sexual abuse to be coextensive. When a court discerns the intent of Congress, "[o]ur analysis *begins* with the language of the statute." *Esquivel-Quintana*, 137 S. Ct. at 1569 (emphasis added) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004)). When defining what crimes constituted aggravated felonies in the INA, Congress included "rape" and "sexual abuse of a minor" separately. § 101(a)(43)(A). The only conclusion we can draw from this drafting is that Congress intended for the terms to describe different aggravated felonies.

The BIA's approach is impermissible because it would strip meaning from the statute's words. "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998) (quoting *Lake Cumberland Trust, Inc. v. U.S. E.P.A.*, 954 F.2d 1218, 1222 (6th Cir. 1992)). To accept the BIA's position that Congress intended for rape and sexual abuse to be synonymous would render meaningless Congress' decision to utilize the two different terms—rape and sexual abuse—to describe two different aggravated felonies.[6] Congress clearly intended to penalize a more expansive set of sex crimes

---

[6]The Government argues that Congress' decision to use these different terms "[a]t most, [reveals that] Congress intended a broader scope of sexual offenses against children to be aggravated felonies: it reveals nothing about the scope of 'rape.'" Respondent Br. at 27. The Government's argument does not flow logically. If Congress

committed against minors than against adults; and to effectuate that intent, Congress used the term "rape" as to adults and "sexual abuse" as to minors.  The BIA ignored the language of the statute.[7]  Its holding cannot stand.

The primary error the BIA committed was to place the states' treatment of the crime above the language of the statute.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (holding that we must discern the intent of *Congress* when interpreting a federal statute).[8]  Even accepting as true that many of the states treated rape and sexual abuse as "interchangeable" in 1996, we cannot impute such an understanding to Congress. The language of the INA prohibits us from doing so.

Congress considered rape to be a separate crime from sexual abuse.  When defining the generic crime of rape, therefore, we are limited to what was understood to be rape, but not sexual abuse, in 1996.  As explained above, it is undisputed that the generic crime of rape in 1996— without considering sexual abuse statutes and definitions—did not include digital penetration. *See Perez-Gonzalez*, 667 F.3d at 627.  Accordingly, Petitioner's conviction, which could be committed by digital penetration, is not an aggravated felony under the INA.

## **Canon Against Absurd Results**

The Government also argues that the BIA's decision should stand because it avoids an absurd result.  Br. of Respondent at 24.  Central to this argument is the fact that, in 1996, most states did not have "rape" statutes.   Instead, those states enacted statutes with "sexual assault/abuse" headings and treated those as their rape statutes (although they criminalized a broader set of conduct than was traditionally considered rape).  According to the Government, this Court's holding would permit an absurd result because it would render a conviction for rape-

---

demonstrated its intent to punish a broader scope of sexual offenses by using the term "sexual abuse" instead of "rape," the only conclusion that may be drawn is that "rape" is more limited than "sexual abuse."

[7]The BIA mentioned only once—and in a footnote without analysis—that the statute included the crime of sexual abuse of a minor.

[8]Admittedly, part of our task is to determine how the states defined rape when ascertaining the generic definition because Congress did not provide an explicit definition; however, when the words of the federal statute conflict with the states' laws, the words of the federal statute must prevail.  Here, the statute treats rape and sexual abuse as different crimes.  We are not permitted to find that they are the same for purposes of the INA.

like conduct in most states not to be an aggravated felony.  We disagree that such a result must be avoided as absurd.

The canon against absurd results should not be used to create an ambiguity in the text of a statute where none exists, such as the case here.  *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).  As discussed above, Congress clearly considered "rape" and "sexual abuse" to be different crimes, as evidenced by Congress listing them as separate crimes.  It is not absurd to conclude that Congress intended to impose only the severest of immigration consequences—removal without the possibility of relief—on those individuals who committed the very specific and heinous crime of rape.  Indeed, in the case before us, although Petitioner has not been convicted of an aggravated felony, he could still be subject to removal for committing a crime involving moral turpitude.  *See* § 1227(a)(2)(A)(i).

Moreover, two senators vocalized the same concern on the Senate floor as the Government has here, but to no avail.  Senators Coverdell and Dole proposed an amendment to the INA in 1996 and suggested adding the following enumerated offenses as grounds for removal:

> [C]onviction of a crime of domestic violence; violation of a judicial protection order in a domestic violence context; conviction for stalking; conviction for child abuse, child sexual abuse, child neglect, or child abandonment, and ***conviction of rape***, *aggravated sodomy*, ***aggravated sexual abuse***, ***sexual abuse***, ***abusive sexual contact***, ***or other crimes of sexual violence***.

142 Cong. Rec. S4058-02, 1996 WL 196292 (Apr. 24, 1996) (emphases added).  Senator Coverdell stated that the proposed amendment was, among other things, made to address the possibility that crimes such as sexual abuse may not be considered grounds for removal and because the lack of uniformity in state laws would likely cause a variation in the application of the INA:

> [W]hile some of these offenses may be deportable under existing headings of crimes of moral turpitude or aggravated felony, ***they are not necessarily covered***.  Uniformity is also a problem.  Whether a crime is one of moral turpitude is a question of State law and thus varies from State to State.  ***An offense may be deportable in one State and not deportable in another***.

*Id.* (emphases added). Congress did not enact the proposed amendment. We cannot use the doctrine of absurd results to pass legislation that Congress did not.

## Chevron Deference or Rule of Lenity

Finally, the parties disagree on the appropriate standard of review. Petitioner argues that the rule of lenity applies to any ambiguity in the statute, whereas the Government contends that the BIA's opinion should receive *Chevron* deference;[9] but there is "no need to resolve whether the rule of lenity or *Chevron* receives priority in this case because the statute, read in context, unambiguously forecloses the [BIA]'s interpretation. Therefore, neither the rule of lenity nor *Chevron* applies." *Esquivel-Quintana*, 137 S. Ct. at 1572.

## III. CONCLUSION

For the aforementioned reasons, Petitioner's conviction for rape under Ohio Rev. Code § 2907.02(A)(1)(c), (B) is not an aggravated felony under the INA. We thus **REVERSE** the decision of the BIA.

---

[9]The Court also considered the well-drafted amici brief filed jointly by the National Immigrant Justice Center, the Immigrant Defense Project, and the National Immigration Project of the National Lawyers Guild.