**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 18, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP432-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF669

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AHMED A.M. AL BAWI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Ahmed Al Bawi appeals from a judgment convicting him of third-degree sexual assault and from an order denying his postconviction motion to withdraw his no-contest plea. Al Bawi argues that he must be permitted to withdraw his plea because his trial counsel was constitutionally ineffective by

failing to adequately advise him of the deportation consequences associated with his plea. Al Bawi asserts that the deportation consequences of his plea were clear under the relevant federal immigration law—namely, that he was convicted of an aggravated felony which would make him "presumptively deportable." Al Bawi therefore contends that his trial counsel performed deficiently by: (1) failing to give him a "probabilistic assessment" of the risk that he "would actually encounter immigration consequences"; and (2) failing to perform legal research or consult with an immigration attorney to determine the likelihood of his deportation after Al Bawi insisted that his prior assistance to the United States military would protect him from deportation.

¶2      We conclude that Al Bawi's trial counsel correctly advised Al Bawi that he "would be subject to deportation" upon pleading no contest to the charge of third-degree sexual assault. Counsel was not required to use any particular words, such as "very likely" or "strong chance," to quantify the risk when advising Al Bawi on the deportation consequences of his plea. Counsel also was not required to research the relevant immigration law or seek guidance from another attorney because counsel ultimately provided correct legal advice. Because an attorney does not perform deficiently by correctly advising a criminal defendant there is a  risk of deportation as a result of his or her guilty or no-contest plea, *see State v. Shata*, 2015 WI 74, ¶67, 364 Wis. 2d 63, 868 N.W.2d 93 ("Correct advice is not deficient."), trial counsel did not perform deficiently. Accordingly, we affirm.

## BACKGROUND

¶3      Al Bawi is an Iraqi citizen who previously served as a translator for the U.S. military. As a result of his cooperation with the U.S. military, Al Bawi

faced threats and persecution in Iraq. The U.S. eventually granted Al Bawi a special visa, and he became a lawful permanent U.S. resident in 2012.

¶4 In August 2018, the State filed a criminal complaint charging Al Bawi with third-degree sexual assault. According to the complaint, Al Bawi had made aggressive, unwanted sexual advances toward the victim, who was a friend of Al Bawi, on an evening in September 2017. Al Bawi and the victim spent the evening drinking alcohol and smoking marijuana, and, at one point, they began kissing. Al Bawi attempted to place his hands down the victim's pants, but she told him to stop because they were just friends. The victim subsequently went to her bedroom, undressed, and fell asleep. Later in the night, the victim awoke to Al Bawi cuddling and "fingering" her. Al Bawi also placed the victim's hand on his penis. The victim told Al Bawi to leave her house, which he then did. Al Bawi later admitted to law enforcement that he had "play[ed] with [the victim's]" vagina after he noticed the victim was naked, which he "took … as a signal."

¶5 In December 2019, Al Bawi pled no contest to the crime charged. He signed a plea questionnaire, which stated: "I understand that if I am not a citizen of the United States, my plea could result in deportation …." The circuit court provided a similar warning at the plea hearing, advising Al Bawi that his plea "could result in deportation" if he was not a U.S. citizen. That warning largely followed the warning prescribed under WIS. STAT. § 971.08(1)(c).[1] *See State v. Mursal*, 2013 WI App 125, ¶¶15-16, 351 Wis. 2d 180, 839 N.W.2d 173

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

(deportation warning required by § 971.08(1)(c) need not be given verbatim; substantial compliance will suffice); *see also* **State v. Reyes Fuerte**, 2017 WI 104, ¶36 n.15, 378 Wis. 2d 504, 904 N.W.2d 773 ("Our decision today does not affect the substantial compliance doctrine [discussed in **Mursal**.]"). The court later withheld sentence and placed Al Bawi on five years' probation with twelve months' conditional jail time.

¶6    Approximately five months after Al Bawi began serving his conditional jail time, the Outagamie County Jail received an "Immigration Detainer—Notice of Action" from the Department of Homeland Security (DHS).[2] The notice stated that there was "probable cause" that Al Bawi "is removable under U.S. immigration law." The notice also asked the jail to notify DHS when Al Bawi would be released and to maintain custody of him for up to two days beyond his release date "to allow DHS to assume custody."

¶7    Al Bawi subsequently filed a postconviction motion, seeking to withdraw his no-contest plea. He alleged that neither he nor his trial counsel knew that third-degree sexual assault was an "aggravated felon[y]" under immigration law, which "virtually always" results in deportation. Al Bawi argued that he received ineffective assistance of counsel because he had been given deficient legal advice regarding the deportation consequences of his plea and, if he had been properly advised of those consequences, Al Bawi would have refused to enter his no-contest plea to third-degree sexual assault.

---

[2] For ease of reading, we have made some alterations to the capitalization used in the detainer notice when quoting the notice in this opinion.

¶8      Al Bawi attached to his motion an affidavit from his trial counsel, in which counsel stated that he "told [Al Bawi] on a number of occasions … that a guilty plea could potentially make him subject to a deportation."  Counsel also stated that each time he discussed deportation with Al Bawi, Al Bawi responded that his service to the U.S. military "would protect him from deportation."  Counsel noted that "[t]o the best of [his] recollection," he did not research the immigration consequences of a conviction for third-degree sexual assault, nor did he tell Al Bawi that such a conviction "would make it extremely likely that [Al Bawi] would be deported from the United States."

¶9      The circuit court held a ***Machner***[3] hearing on Al Bawi's motion, at which both Al Bawi and his trial counsel testified.  Counsel testified that every time he discussed Al Bawi's immigration status, Al Bawi "indicated that his immigration status was secure; that he had worked for the military."  Counsel further stated that he "did not defer to [Al Bawi's opinion about his immigration status]. I always consistently told him that he would be subject to deportation if he entered a plea."  When asked whether counsel performed any research after Al Bawi said his immigration status was secure, counsel responded:

> I did not.  I told him multiple times again that he would be subject to deportation.  It seemed as though he brushed that off.  I don't know why.  He certainly wasn't getting that from me.  I would tell him multiple times that this was a serious charge and he would be subject to deportation, not necessarily deported but would be subject to that, and he would have to deal with that in immigration court.

---

[3] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶10 Trial counsel also testified that he had discussed with Al Bawi the "context … of increased deportation" under the then-current U.S. President, but counsel conceded that he "never weighed in on the likelihood that [Al Bawi] would be deported." Counsel admitted that he could not recall researching the potential immigration consequences of Al Bawi's plea, nor could he recall reading any immigration statutes or contacting other attorneys for advice. Counsel further testified, however, that he had previous experience representing immigrant criminal defendants and had "participated in seminars solely on immigration law."

¶11 Al Bawi had a different perspective about the legal advice he had received. Al Bawi testified at the *Machner* hearing that he and his trial counsel discussed immigration consequences on only two occasions. Al Bawi said that during the first conversation, which was before the plea hearing, he asked counsel, "[D]o you think I'd get deported, even though I worked for the U.S. military?" Counsel purportedly responded, "I'm not an immigration lawyer, but I highly doubt it." With regard to the second conversation, Al Bawi testified that counsel had told him before sentencing that the plea "can cause issues getting your citizenship down the road, but then he corrected himself. He said, but I wouldn't even worry about it because you worked for the Army." Al Bawi said that "the word deportation" was never mentioned during the second conversation.

¶12 Al Bawi also testified that he would not have entered the plea if he had been told by his trial counsel that "there was a strong possibility that [he] would be deported … after entering this plea." Al Bawi explained that "getting deported is a death sentence" because an insurgent group in Iraq has him "on a hit list." He testified that while he was still in Iraq, his vehicle was shot sixteen times, and one of those bullets hit him in the leg.

¶13 The circuit court issued a written decision denying Al Bawi's postconviction motion. The court recognized that there were "multiple inconsistencies in the record" as to trial counsel's advice. Nonetheless, the court resolved those inconsistencies by finding trial counsel's "*Machner* hearing testimony to be the most credible record of the advice … provided [to] Al Bawi" and by expressly finding Al Bawi incredible in key respects. Specifically, the court found that trial counsel advised Al Bawi that Al Bawi "would be subject to deportation." The court noted that trial counsel "did not offer an opinion on the likelihood of Al Bawi actually being deported," but "he did advise Al Bawi that deportation was a risk that arose with pleading to the sexual assault charge, and Al Bawi would have to deal with that in immigration court." The court also observed that trial counsel "articulated the heightened risk [of deportation] under an administration that was taking a firm stance on immigration policy."

¶14 Based on those findings, the circuit court concluded that trial counsel had not performed deficiently. The court recognized that Al Bawi's "immigration status was clear" and that Al Bawi had pleaded to an aggravated felony, which made him "presumptively deportable" upon conviction. The court concluded, however, that trial counsel's "admonishment that Al Bawi 'would be subject to deportation' was adequate because it accurately reflected the risk of deportation that Al Bawi faced." The court also determined that even if trial counsel had provided deficient legal advice, Al Bawi suffered no prejudice "because the outcome of this case was unlikely to be different if [trial counsel] had given Al Bawi more detailed immigration advice."

¶15 Al Bawi now appeals. Additional facts will be provided as necessary below.

**DISCUSSION**

¶16     Al Bawi argues that he pleaded no contest to third-degree sexual assault without being "adequately advised of the immigration consequences," and, "[a]s a result, he entered a plea that he otherwise would not have."  Al Bawi therefore claims that his trial counsel provided constitutionally ineffective assistance, such that he should be allowed to withdraw his no-contest plea.

¶17     A defendant seeking to withdraw a plea after sentencing must prove by clear and convincing evidence that plea withdrawal is necessary to correct a manifest injustice.  *State v. Savage*, 2020 WI 93, ¶24, 395 Wis. 2d 1, 951 N.W.2d 838.  One way to demonstrate a manifest injustice is to show that the plea is infirm due to "some factor extrinsic to the plea colloquy," such as ineffective assistance of counsel.  *State v. Villegas*, 2018 WI App 9, ¶19, 380 Wis. 2d 246, 908 N.W.2d 198 (quoting *State v. Howell*, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48).

¶18     Criminal defendants in Wisconsin enjoy a right to the effective assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution.  *State v. Ortiz-Mondragon*, 2015 WI 73, ¶31, 364 Wis. 2d 1, 866 N.W.2d 717.  To establish ineffective assistance of counsel, the defendant must prove: (1) that counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense.  *Id.*, ¶32.  If the defendant fails to show that counsel's performance was deficient, we need not consider the prejudice inquiry.  *Id.*  In evaluating a claim of ineffective assistance of counsel, we will uphold the circuit court's findings of fact and its assessments of credibility and demeanor unless they are clearly erroneous.  *Id.*, ¶30.  Whether counsel's assistance was ineffective, however, is a question of law that we review de novo.  *Id.*

¶19 A defendant can establish deficient performance by showing that his or her counsel's representation "'fell below an objective standard of reasonableness' considering all the circumstances." *Id.*, ¶52 (citation omitted). In evaluating the reasonableness of counsel's performance, we make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate from counsel's perspective at the time." *Savage*, 395 Wis. 2d 1, ¶28 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). We are "highly deferential" to counsel's conduct, and there is a "strong presumption" that his or her conduct "falls within the wide range of reasonable professional assistance." *Ortiz-Mondragon*, 364 Wis. 2d 1, ¶52 (citation omitted). Thus, "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." *Ortiz-Mondragon*, 364 Wis. 2d 1, ¶52 (citation omitted).

¶20 To prove prejudice, a defendant must show that "there is a reasonable probability" that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Where a defendant has received deficient legal advice about the immigration consequences of a plea, the defendant can establish prejudice by showing that "a decision to reject the plea bargain would have been rational under the circumstances." *State v. Mendez*, 2014 WI App 57, ¶12, 354 Wis. 2d 88, 847 N.W.2d 895 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)), *abrogated on other grounds by Shata*, 364 Wis. 2d 63, ¶78.

¶21 The constitutional guarantee of effective assistance of counsel "does not demand much in the way of knowledge of immigration law: it can be complex and confusing, 'a legal specialty of its own.'" *Villegas,* 380 Wis. 2d 246, ¶33

9

(citation omitted). Nonetheless, a criminal defense attorney "must inform [the defendant] whether his [or her] plea carries a risk of deportation." *Shata*, 364 Wis. 2d 63, ¶35 (quoting *Padilla*, 559 U.S. at 374); *see also* ***Chaidez v. United States***, 568 U.S. 342, 344 (2013). Counsel's obligations under this duty depend on the clarity of the immigration law and of the resulting consequences of a conviction. *See Shata*, 364 Wis. 2d 63, ¶35. If the law is "not succinct and straightforward," then "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* (quoting *Padilla*, 559 U.S. at 369). If "the deportation consequence is truly clear," however, "the duty to give *correct* advice is equally clear." *Id.* (emphasis added; quoting *Padilla*, 559 U.S. at 369).

¶22 Al Bawi argues that the deportation consequences of his plea are clear. He contends that his conviction constitutes an "aggravated felony" for purposes of 8 U.S.C. §§ 1227(a)(2)(a)(iii) and 1228(a), (c) (2018),[4] which "makes a non-citizen deportable and leaves virtually no options for relief." Al Bawi further argues that "[d]etermining whether third-degree sexual assault under Wisconsin law is an aggravated felony is uncomplicated" because "aggravated felonies are clearly defined in immigration law" as including "murder, rape, or sexual abuse of a minor." *See* 8 U.S.C. § 1101(a)(43)(A). Al Bawi also cites two unpublished federal cases in which a conviction under WIS. STAT. § 940.225(3)—the statute under which Al Bawi was convicted—was determined to be an aggravated felony. *See* ***United States v. Panzo-Acahua***, No. 05-2188,

---

[4] All references to the United States Code are to the 2018 version unless otherwise noted.

182 F. App'x 582 (7th Cir. May 31, 2006); ***Hairic v. Holder***, No. 13-2256, 2014 WL 541450 (7th Cir. Feb. 12, 2014).

¶23    The State does not address Al Bawi's argument that the deportation consequences of his plea are clear, and it therefore concedes the argument. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). Although we accept the State's concession, we do not adopt Al Bawi's argument. Rather, we assume without deciding that Al Bawi's conviction under WIS. STAT. § 940.225(3) constitutes an aggravated felony and that Al Bawi is "conclusively presumed to be deportable from the United States" as a result of that conviction.[5] *See* 8 U.S.C. § 1228(c).

---

[5] We are cautious about endorsing Al Bawi's analysis because "deportation consequences are often unclear," *see* ***Padilla v. Kentucky***, 559 U.S. 356, 369 n.10 (2010), and "determining whether a particular crime is an 'aggravated felony' … is *not* an easy task," *see* ***id.*** at 378 (Alito, J., concurring; emphasis added).  Indeed, "[d]efense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.'" ***Id.*** (Alito, J., concurring).

(continued)

¶24 Having assumed that Al Bawi's plea has clear deportation consequences, we now consider Al Bawi's argument that his trial counsel failed to give "clear advice" regarding those deportation consequences. Al Bawi acknowledges that trial counsel told him that he "would be subject to deportation," but he argues that such advice was insufficient because it did not include a "probabilistic assessment" of the risk that he "would actually encounter immigration consequences." Al Bawi faults counsel for not telling him that there was a "strong chance" of deportation or that deportation was "likely or very likely." In support of his arguments, Al Bawi cites **Shata** and **Mendez** as "specific examples of what constitutes clear advice."

---

Here, the task of determining whether Al Bawi's conviction is an aggravated felony is not as straightforward as he argues. He is correct that the term "aggravated felony" includes a conviction for "rape." *See* 8 U.S.C. § 1101(a)43(A). But the term "rape" is not defined under 8 U.S.C. § 1101(a)43(A), and at least two federal courts of appeal have concluded that "digital penetration" does not fall within the meaning of "rape" as that term is used in 8 U.S.C. § 1101(a)43(A). *See* **Keeley v. Whitaker**, 910 F.3d 878, 882-84 (6th Cir. 2018) (concluding that the "[p]etitioner's conviction, which could be committed by digital penetration, is not an aggravated felony under the [Immigration and Nationality Act]"); **Perez-Gonzalez v. Holder**, 667 F.3d 622, 625-27 (5th Cir. 2012). Al Bawi does not acknowledge or address this legal authority, even though the most serious conduct alleged in the criminal complaint appears to involve Al Bawi's nonconsensual digital penetration of the victim's vagina, which constitutes "sexual intercourse" for purposes of WIS. STAT. § 940.225(3). *See* § 940.225(5)(c). Rather—without explanation—Al Bawi relies on the definition of "rape" discussed in a decision by the Board of Immigration Appeals (BIA) which was later reversed in **Keeley**. *See* **In re Keeley**, 27 I. & N. Dec. 146 (BIA 2017) (concluding "rape" includes "digital or mechanical penetration of the vagina or anus, no matter how slight"), *rev'd*, **Keeley**, 910 F.3d 878. We recognize that the BIA is not bound by **Keeley**, 910 F.3d 878, outside of the Sixth Circuit Court of Appeals, *see* **In re Singh**, 25 I. & N. Dec. 670, 672 (BIA 2012) ("We apply the law of the circuit in cases arising in that jurisdiction, but we are not bound by a decision of a court of appeals in a different circuit."), but we are still wary of Al Bawi's reliance on a reversed decision to support his arguments.

We also note that neither of the federal cases cited by Al Bawi contains a bright-line holding that *all* convictions under WIS. STAT. § 940.225(3) constitute "rape" as that term is used in 8 U.S.C. § 1101(a)43(A). *See* **United States v. Panzo-Acahua**, No. 05-2188, 182 F. App'x 582 (7th Cir. May 31, 2006); **Hairic v. Holder**, No. 13-2256, 2014 WL 541450 (7th Cir. Feb. 12, 2014). Thus, we question if an attorney could easily ascertain from these cases whether Al Bawi's plea to third-degree sexual assault would constitute an aggravated felony.

¶25 From the outset, we note that Al Bawi seems to confuse the constitutional standard upon which we examine an attorney's legal advice when the deportation consequences of a plea are "truly clear." Al Bawi repeatedly suggests that an attorney's advice must be "clear" or "truly clear." Although we agree that attorneys should strive to provide "clear" legal advice, "clear" advice is not the relevant standard. Rather, when an attorney must advise a client about the risk of adverse immigration consequences from a conviction, the attorney must provide *correct* legal advice.[6] *See Shata*, 364 Wis. 2d 63, ¶¶58, 67; *Padilla*, 559 U.S. at 369.

¶26 Al Bawi does not directly address the issue of whether his trial counsel provided him with correct legal advice. In fact, he never asserts that his trial counsel provided "incorrect" legal advice. Instead, Al Bawi seems to suggest that trial counsel did not give "accurate" advice because counsel used only "the most general terms" when discussing the deportation consequences of Al Bawi's plea.

¶27 We reject Al Bawi's argument that his trial counsel failed to provide him with accurate legal advice, and we conclude that counsel provided Al Bawi with sufficiently correct legal advice regarding the deportation consequences of

---

[6] Al Bawi correctly observes that *Padilla*'s holding is not limited to "affirmative misadvice." *See Padilla*, 559 U.S. at 370. In other words, an attorney's performance can be deficient either where the attorney provides incorrect legal advice on the immigration consequences of a plea, or where the attorney fails to provide any advice on the immigration consequences of a plea. *See id.* at 371 ("It is quintessentially the duty of counsel to provide her [or his] client with available advice about an issue like deportation, and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" (citation omitted)). This case, however, does not involve the latter circumstance. It is undisputed that Al Bawi's attorney advised Al Bawi on the deportation consequences of his plea. Thus, the relevant question is whether Al Bawi's attorney provided correct legal advice.

his plea, such that counsel met the constitutional requirements under **Padilla** and **Shata**. As the circuit court found, trial counsel advised Al Bawi that he "would be subject to deportation" as a result of his no-contest plea to third-degree sexual assault. That advice was correct because Al Bawi was "conclusively presumed to be deportable from the United States" after he was convicted of an aggravated felony. *See* 8 U.S.C. § 1228(c) ("An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States.").

¶28 Although Al Bawi's trial counsel never advised him that he would actually be deported, counsel did not and could not "know with certainty whether the federal government [would actually] deport [Al Bawi] upon conviction."[7] *See Shata*, 364 Wis. 2d 63, ¶71. "[T]he executive branch has essentially unreviewable prosecutorial discretion with respect to commencing deportation proceedings, adjudicating cases, and executing removal orders," and, therefore, "deportation is not an absolutely certain consequence of a conviction for a deportable offense." *Id.*, ¶¶59-60. Accordingly, "[c]ounsel need not read the tea leaves and attempt to predict what federal immigration authorities will do." *Villegas*, 380 Wis. 2d 246, ¶31.

¶29 For similar reasons, Al Bawi's suggestion that his trial counsel was required to provide him with a "probabilistic assessment" of the risk that he would actually encounter deportation also fails. Again, our supreme court's holding in **Shata** controls. A defense attorney is not required "to use any particular words,

---

[7] Trial counsel's **Machner** hearing testimony is consistent with this notion and demonstrates that he appreciated the nuances of his legal advice. Counsel testified that he advised Al Bawi that "he would be subject to deportation, not necessarily deported but would be subject to that, and he would have to deal with that in immigration court."

such as 'inevitable deportation,' or to even convey the idea of inevitable deportation" when advising a client regarding a plea's deportation consequences. *Shata*, 364 Wis. 2d 63, ¶62. Rather, "counsel must inform [the defendant] whether his [or her] plea carries a *risk* of deportation." *Id.* (last alteration in original; quoting *Padilla*, 559 U.S. at 374).

¶30 Al Bawi's reliance on *Mendez* and *Shata* to support his argument for requiring a probabilistic assessment is also unavailing. In *Mendez*, this court rejected the State's argument that defense counsel provided constitutionally effective assistance by "'basically' reiterat[ing] the general warning on the plea questionnaire, that 'a conviction may make [the defendant] inadmissible or deportable.'" *Mendez*, 354 Wis. 2d 88, ¶¶4, 13-14 (second alteration in original). In doing so, we recognized that the defendant's deportation was "virtually inevitable." *Id.*, ¶13 (citation omitted). We also drew a distinction between the advice given to the defendant and the advice that was held to be constitutionally sufficient in *Chacon v. State*, 409 S.W.3d 529 (Mo. Ct. App. 2013), where the defendant was advised that "deportation was 'very likely.'" *See Mendez*, 354 Wis. 2d 88, ¶14 (quoting *Chacon*, 409 S.W.3d at 536). We never held, however, that a certain quantum of precision was constitutionally required when assessing the probability or likelihood of deportation. *See id.*, ¶¶13-14.

¶31 More important relative to our decision in *Mendez*, one year later, our supreme court decided *Shata*. There, the defendant argued that his attorney performed deficiently by telling him that he had a "strong chance" of being deported upon conviction instead of telling him that "his conviction would absolutely result in deportation." *Shata*, 364 Wis. 2d 63, ¶3. Our supreme court rejected that argument. *Id.*, ¶79. In doing so, the court defined the relevant inquiry as whether counsel provided *correct* legal advice because "[c]orrect advice

is not deficient." *Id.*, ¶¶58, 67. The court concluded the defendant's attorney "satisfied that requirement by correctly advising [him] that his guilty plea carried a 'strong chance' of deportation." *Id.*, ¶79.

¶32 The *Shata* court, however, never held that counsel's "strong chance" assessment was constitutionally required or the only advice that could have been provided to the defendant. *See id.*, ¶¶58-67, 76-79. To the contrary, the court expressly stated that defense attorneys are not required "to use any particular words" when explaining the immigration consequences of a plea. *See id.*, ¶62. The court also interpreted *Padilla* as "suggest[ing] that an attorney would give reasonably competent advice by providing a warning similar to the one that WIS. STAT. § 971.08 requires a circuit court to give: that an alien's conviction *may result* in deportation." *Shata*, 364 Wis. 2d 63, ¶65.

¶33 Our supreme court determined that "[t]he bottom line is that an attorney's advice must be adequate to allow a defendant to knowingly, intelligently, and voluntarily decide whether to enter a guilty plea." *Id.*, ¶77. In the court's view, the combination of counsel's advice, "the plea questionnaire[,] and the circuit court's immigration warning" ensured that the defendant in *Shata* knowingly, intelligently, and voluntarily entered his guilty plea. *Id.* The court also expressly withdrew "any language" in *Mendez* suggesting that an attorney is required to "advise an alien client that a conviction for a deportable offense will necessarily result in deportation," but the court held that "[t]he remainder of *Mendez* retains precedential value." *Shata*, 364 Wis. 2d 63, ¶78.

¶34 Neither our decision in *Mendez* nor our supreme court's decision in *Shata* requires a defense attorney to use probabilistic terms, such as "strong chance" or "very likely," when advising a defendant about the risk of deportation.

Even if an attorney were required to address the likelihood of deportation consequences, Al Bawi received meaningfully better advice than the advice that was held to be deficient in *Mendez*. The defendant in *Mendez* was advised that "a conviction *may* make [him] inadmissible or deportable." *Mendez*, 354 Wis. 2d 88, ¶4 (emphasis added). In contrast, Al Bawi was advised that he "*would be* subject to deportation" as a result of his no-contest plea and that he "*would have to* deal with that in immigration court." (Emphasis added.) He was also advised that he faced an increased risk of immigration consequences under the then-current presidential administration. In our view, the advice given to Al Bawi expressed greater certainty and probability than the advice given in *Mendez*.[8]

¶35 In short, when advising Al Bawi on the deportation consequences of his plea, his trial counsel was not required to use probabilistic terms or make a probabilistic assessment regarding the actual likelihood of deportation consequences. Therefore, trial counsel did not perform deficiently because he correctly advised Al Bawi that he "would be subject to deportation" as a result of his no-contest plea and that he "would have to deal with [the possibility of deportation] in immigration court." *See Shata*, 364 Wis. 2d 63, ¶67.

¶36 Al Bawi alternatively argues that his trial counsel performed deficiently by failing "to correct Al Bawi's misunderstanding that his military service would save him from deportation." He contends that "[a]n objectively

---

[8] Arguably, the advice in *State v. Mendez*, 2014 WI App 57, 354 Wis. 2d 88, 847 N.W.2d 895, was virtually the same as the advice that an attorney must provide when the immigration consequences of a plea are *not* clear—i.e., "that pending criminal charges may carry a risk of adverse immigration consequences." *See State v. Shata*, 2015 WI 74, ¶35, 364 Wis. 2d 63, 868 N.W.2d 93 (quoting *Padilla*, 559 U.S. at 369). In this case, however, Al Bawi received legal advice that correctly expressed more certainty regarding the risk of adverse deportation consequences.

17

reasonable attorney knowing that his noncitizen client held strong views regarding his safety from deportation would not have just taken his client's word for it." He contends that under those particular circumstances, trial counsel had an obligation to research the validity of Al Bawi's opinion regarding the interplay between his service to the U.S. military and the immigration consequences of his plea.

¶37     Contrary to Al Bawi's argument, the circuit court never found that his trial counsel deferred to Al Bawi's opinion regarding the deportation consequences of his plea, nor does the record support such an argument. When asked at the *Machner* hearing whether trial counsel performed follow-up research on the validity of Al Bawi's opinion, trial counsel testified: "I did not. I told him multiple times again that he would be subject to deportation. It seemed as though he brushed that off. I don't know why. He certainly wasn't getting that from me. I would tell him multiple times that … he would be subject to deportation."[9] Although the court did not expressly discuss this testimony, the court's decision plainly reflects that it credited and relied on this testimony because the court rejected Al Bawi's testimony "that [trial counsel] did not emphasize the risk of

---

[9] Trial counsel also testified:

> And I did not … go through the specific statute on how it may impact—you know, that this would automatically result in a deportation.

> In fact, Mr. Al Bawi seemed to suggest that he had some special status because of his military assistance, and I would always caution him over that, telling him that—multiple times that he would be subject to deportation because of this, and he seemed to brush it off.

When asked why counsel "[felt] it was important to repeat [his advice] to [Al Bawi]," counsel stated: "Well, I knew he wasn't a U.S. citizen, and I was concerned and I vocalized that to him, and I wanted him to understand that."

18

deportation that Al Bawi faced," finding that testimony to be incredible. We therefore reject Al Bawi's faulty premise that his trial counsel simply relied on Al Bawi's opinion regarding the deportation consequences of his plea.

¶38    With that factual basis in mind, we conclude that Al Bawi's trial counsel did not perform deficiently by not researching the relevant immigration law or contacting another attorney for guidance. As discussed above, trial counsel correctly warned Al Bawi that he "would be subject to deportation" as a result of his no-contest plea to third-degree sexual assault. Trial counsel also emphasized this risk to Al Bawi multiple times. Although trial counsel testified that he did not research the relevant immigration law, he did say that he had previous experience representing immigrant criminal defendants and had "participated in seminars solely on immigration law." Because trial counsel ultimately provided correct advice by warning Al Bawi that he "would be subject to deportation," counsel did not perform deficiently. *See Shata*, 364 Wis. 2d 63, ¶75 (concluding that an attorney's failure to read the relevant immigration statutes was not deficient performance because, "[m]ost importantly," the attorney "gave correct advice").

¶39    In sum, Al Bawi's trial counsel did not perform deficiently by correctly advising Al Bawi that he "would be subject to deportation" if he pled no contest to third-degree sexual assault. Although counsel did not advise Al Bawi using probabilistic terms, such advice was not required. *See id.*, ¶¶62, 67; *see also State v. Thiel*, 2003 WI 111, ¶61, 264 Wis. 2d 571, 665 N.W.2d 305 ("The Sixth Amendment does not demand perfection."). Counsel also did not perform deficiently by failing to research the relevant immigration law or by failing to contact another attorney because, again, counsel provided correct legal advice.

*By the Court.*—Judgment and order affirmed.

19

Not recommended for publication in the official reports.